**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 21-MJ-212 (GMH) |
| | : | |
| DANIEL DEAN EGTVEDT | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that the defendant, Daniel Egtvedt, be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2). The Court should order the defendant detained pursuant to 18 U.S.C. § 3142(e) because there are no conditions or combination of conditions which will reasonably assure the appearance of the defendant as required and ensure the safety of any other person and the community.

**PROCEDURAL HISTORY**

On February 9, 2021, the defendant was charged by complaint with: 1) 18 U.S.C. § 111(a)(1) - Assault on a Federal Officer or Person Assisting a Federal Officer; 2) 18 U.S.C. § 231(a)(3) - Obstruction of Law Enforcement During Civil Disorder; 3) 18 U.S.C. § 1512(c)(2) - Obstruction of Justice/Congress; 4) 18 U.S.C. § 1752(a)(1), (2) & (4) - Unlawful Entry, Disorderly Conduct, and Physical Violence into/in/on Restricted Building or Grounds; and 5) 40 U.S.C. § 5104(e)(2)(D) & (F) - Disorderly Conduct and Physical Violence on Capitol Grounds. On February 16, 2021, at the defendant's initial appearance, the government orally moved for the

defendant's detention pending trial pursuant to § 3142(f)(2) of the federal bail statute. The Court

set this matter for a detention hearing on Monday, February 22, 2021, at 3:30 p.m.

## FACTUAL BACKGROUND

This Court is already familiar with the factual background related to the attack on the U.S.

Capitol that occurred on January 6, 2021. We proffer additional evidence as it relates to the

defendant's conduct from that day:

### The Defendant's Forced Entry into The Capitol

Cell phone records for the defendant's cell phone number indicate that the device assigned

to his phone number first appeared in or near the U.S. Capitol at 2:37 p.m. – as the evacuations

were occurring. Mere minutes later, rioters broke into the office of House Speaker Nancy Pelosi,

and one was shot and killed while attempting to break into the House Chamber through the broken

windows. At approximately 2:47 p.m. subjects broke into the United States Senate Chamber.

Meanwhile, a social media video published by ProPublica[1] shows an individual, consistent with

the defendant's appearance, in a mob as it forced its way into the U.S. Capitol through a broken

door. The video, time stamped at 2:47 p.m., shows the defendant standing at the threshold of an

exterior door to the U.S. Capitol. The defendant appears to have been recently sprayed with some

type of chemical irritant and was attempting to wipe it off as he and others pushed toward the

entrance. Others rioters nearby are heard saying "here we go, here's the next rush … there's a push

inside, with resistance," as the rioters continue to push further inside. At approximately 3:08 p.m.,

a second video[2] shows the defendant walking down a U.S. Capitol hallway as the crowd chanted

about "traitors."

---

[1] Available at https://projects.propublica.org/parler-capitol-videos/?id=dM4L9bbfDmJ1.
[2] Available at https://projects.propublica.org/parler-capitol-videos/?id=LQN0zyD01D3i.

## The Defendant's Assaultive Conduct

At 3:00 p.m., U.S. Capitol Police ("USCP") Officer M.M. and Metropolitan Police Department ("MPD") Officer M.D. were stationed in the Hall of Columns, on the south side of the U.S. Capitol Building, directly under the House Chamber. Officers M.M. and M.D. and their units were escorting rioters out of the building. At 3:11 p.m., Officer M.D.'s BWC shows the defendant walking down the Hall of Columns towards the exit. As the defendant walked down the hall, he stated, "God bless all of you." Officers responded by directing him to leave, stating, "Keep going sir."

*Exhibit 1A*



USCP surveillance cameras show the defendant walked toward the exit and appeared to leave the Hall of Columns. Several seconds later, he reappeared and tried to walk further back into the U.S. Capitol Building, in the direction of the Rotunda. An FBI Special Agent dressed in tactical

attire directed the defendant back outside. Rather than follow this second directive to leave the restricted building, the defendant shook his head, and proceeded further into the building.

*Exhibit 1B*



As the defendant proceeded back down the Hall of Columns, Officer M.M., seen in the surveillance video wearing her USCP bicycle uniform, gave the defendant a third set of commands to leave the premises.

*Exhibit 1C*



The defendant disregarded Officer M.M.'s commands and swatted at her outstretched arm. He grabbed at her with both of his hands, and would not let go, forcing Officer M.M. to swing her right arm in a downward motion to break the defendant's grip on her. As the defendant attempted to rush at Officer M.M., he yelled at her and others to shoot him.

*Exhibit 1D*



Seeing the defendant screaming and rushing at Officer M.M., Officer M.D. and others tried to stop the defendant.

*Exhibit 1E*



As the defendant shoved another officer, Officer M.D. tried to grab the defendant below the waist. Officer M.D. and several other officers then attempted to push the defendant back in the direction of the exit door.

*Exhibit 1F*



At one point, the defendant had approximately five officers attempting to hold him back as he persisted in charging at Officer M.M. The defendant eventually fell to the ground, causing Officer M.D. to fall down with him. Officer M.D. was still holding on to the defendant as he fell, and injured his shoulder in the fall.

*Exhibit 1G*



When officers attempted to assist the defendant to his feet, he resumed fighting with the officers. According to Officer M.M., the defendant said he was not going to leave and splayed out his arms and legs while lying on his back in an effort to prevent law enforcement from picking him up. Officers eventually moved the defendant through the vestibule doors, towards the south side exit door, where he fell again. Officers asked the defendant if he needed medical treatment, which he declined. Officer M.M. held the door open for the defendant for several seconds, waiting for the defendant to get up, while others assisted him with getting up. As soon as the defendant got to his feet, he attempted to reenter the Hall of Columns yet again. Officer M.M. once more put her hands out to stop the defendant.

*Exhibit 2A*



The defendant swatted Officer M.M.'s hand as she attempted to stop him, then grabbed her by the wrist as he tried to push past her.

*Exhibit 2B*



Officers were finally able to walk the defendant down an exterior ramp outside of the south entrance door. The defendant was removed from the U.S. Capitol Building at approximately 3:14 p.m., but USCP cameras show the defendant continued to pace back and forth on the exterior ramp for several minutes. According to the defendant's cell phone records, a device assigned to his cell phone number appeared to remain in or near the U.S. Capitol until 3:31 p.m.

### The Defendant's Interviews

While he was on the U.S. Capitol Grounds, the defendant gave two interviews. The first interview occurred while the defendant was still in the U.S. Capitol Building. The defendant provided an interview to an individual, Tim Gionet, AKA "Baked Alaska, who was posting the interview on DLive, a blockchain livestreaming community. During the interview, the defendant told the cameraman, "Everyone that's outside, tell them to get in here now." He implored, "Everybody, if you're seeing this, come down here now. We're not backing away; this is our house." The defendant ended the interview by screaming that members of Congress should "grow a spine or fucking resign!" into the camera. Law enforcement included a picture of the defendant from this interview in an FBI Seeking Information poster as "BOLO 76." W-1, who has known the defendant for approximately 15 years, contacted the FBI and identified the defendant as the individual in BOLO 76.

During the second interview,[3] the defendant told the cameraman, "I told them, I said you are in violation of the Constitution, this is the people's house, and it has been taken over. And I said, the Constitution says to preserve and protect against all enemies, foreign and domestic. You are in violation of that, sirs." The defendant then made a motion as though he was sprayed with

---

[3] Available at https://www.youtube.com/watch?v=lY_E6oYRskc .

pepper spray. During the interview, the defendant claimed that he had been pepper sprayed twice. As with his prior interview, the defendant concluded with a call to others, stating, "We are in treasonous situations here. People please come down to the United States Capitol, right now. Everybody. Please come."

### The Defendant's Arrest and Statements

On the morning of February 13, 2021, Maryland State Police ("MSP") responded to a domestic incident at the residence of the defendant's close relative (W-2). When MSP arrived at W-2's residence, W-2 advised them that IT was trying to take an elderly relative to receive a COVID-19 vaccination; however, the defendant was attempting to prevent them from leaving the residence. The defendant, who was present, told MSP that he wanted to stop W-2 from taking the elderly relative to get vaccinated. The defendant also advised MSP that he lived at a different, nearby residence. Several hours later, MSP confirmed that the defendant had an active warrant for his arrest, returned to the area and arrested the defendant near W-2's residence when they stopped the vehicle he was driving.

### <u>ARGUMENT</u>

There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community or the defendant's return to the Court.

11

**Nature and Circumstances of the Offense Charged**

The defendant's entrance into the restricted Capitol Building occurred amidst some of the most dangerous, and indeed, deadliest, moments of January 6, 2021. At 2:37 p.m., as the device associated with the defendant's phone number first appeared in or near the U.S. Capitol building, USCP officers were hurriedly evacuating lawmakers, Vice President Mike Pence, and president pro tempore of the Senate, Charles Grassley, for their safety. At 2:47 p.m., when video shows an individual consistent in appearance with the defendant forcing his way into the U.S. Capitol, an individual had just been fatally shot while attempting to break into the House Chamber through broken windows and other rioters were breaking into the Senate Chamber. The defendant's actions – as part of the overall mob – contributed to rioters overwhelming and breaching the U.S. Capitol as Congress was attempting to certify the Electoral College vote. And it is apparent from the defendant's own statements on January 6, 2021 that the defendant's intent was to, in fact, take over "the peoples' house."

The defendant's actions only escalated and became more volatile once he entered the U.S. Capitol. The defendant's disregard for law enforcement's authority is manifest as he blatantly disregarded at least three separate directives, from different officers, to exit the U.S. Capitol. He targeted Officer M.M. when she tried to stand between him and his objective of taking over the U.S. Capitol. Even after he grabbed at her and numerous officers were trying to restrain him, he continued his charge at her. What raises tremendous concern is that the defendant, who is a physically imposing presence at 6'2" and 320 lbs., could not be deterred from his goal of violently taking over the U.S. Capitol. Even after he fell to the ground, injuring Officer M.D., the defendant refused to leave. When the defendant was forcibly removed to the doorway of the Hall of Columns vestibule, he nevertheless strained to reenter the U.S. Capitol. He once again assaulted Officer

M.M., who bravely put herself between a man bent on violence and upheaval, and the building she was determined to protect.

Even after the defendant was forcibly removed from the U.S. Capitol building, he cried out for others to come to the U.S. Capitol to address what he deemed "treasonous situations here." Ironically, the "treasonous situations" that the defendant referred to were not his own forced entry into the U.S. Capitol and multiple assaults of law enforcement officers protecting it, but the legitimate functioning of Congress. The defendant's relentless obstructive conduct and multiple assaults of law enforcement officers show that the nature and circumstances of these offenses overwhelmingly weigh in favor of detention.

### Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. As discussed above, the evidence against the defendant includes USCP security camera videos, law enforcement body worn cameras ("BWC"), and well as the defendant's own words expressed through social media and interviews that he provided to fellow rioters. The video evidence is objective and unwavering. Cellular phone records corroborate the video evidence, placing a phone assigned to the defendant's phone number in or near the U.S. Capitol at the time of the relevant events. Moreover, W-1 and W-2 both identified the defendant in photos and videos

In addition, the evidence against the defendant includes credible witness accounts. Multiple law enforcement officers from USCP, MPD, and the Federal Bureau of Investigation observed the defendant's actions. These officers and agents had direct, unobstructed views of the defendant's assaultive conduct. The evidence against this defendant is overwhelmingly strong, and accordingly, the weight of the evidence weighs heavily in favor of detention.

## Defendant's History and Characteristics

The defendant's recent history and characteristics also support the defendant's continued detention. While the government acknowledges that the defendant has no criminal history, his willingness to engage in assaultive behavior in response to what he perceived to be law enforcement's traitorous actions exemplify the danger that the defendant poses to the community, if released. W-1 and W-2 both advised that the defendant's mental health declined after he went through a divorce. The defendant's conduct at W-2's residence on February 13, 2021, at a minimum, shows the defendant will go to any length to stop what he perceives to be illegitimate government actions. W-2 called law enforcement because IT was worried the defendant, who had come over to W-2's residence, was going to physically interfere with W-2 taking an elderly relative to receive a COVID-19 vaccination. The defendant told MSP that the vaccine will eventually kill off a lot of people as a population control method from the government. The defendant further advised that he was not going to let the elderly relative leave to get vaccinated, and would need to be arrested if the elderly relative left. It should also be noted that when the defendant was arrested later that day, he was carrying a Concealed Firearm Permit from the Utah Department of Public Safety in his own name, despite having no apparent ties to the state of Utah.

The defendant's willingness to engage in continued assaultive and obstructive conduct towards law enforcement officers, coupled with his the lengths he is willing to go to combat perceived government misdeeds – whether it be certifying the Electoral College or ending a global pandemic, should give this Court great concern about the danger he would pose to the community, if released.

**Danger to the Community and Flight Risk**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The defendant simply does not recognize the authority of the federal government, and his actions prove he would not comply with any court orders. His statements repeatedly referred to taking over Congress, and he accused law enforcement of violating the Constitution when they were trying to protect members of Congress, who were carrying out a constitutionally mandated task. Most recently, after the defendant was arrested by MSP in Garrett County, MD, the defendant wrote two troubling letters to the Garrett County Sheriff. In the letters, attached as Exhibits 4 and 5, the defendant refers to his rights under the "organic" Constitution of 1776. In the second letter, the defendant refers to himself as having extenuating circumstances in "historical events currently in play." Exhibit 5 at 2. Most concerning, in both letters, the defendant states that if he is released to federal agents, the sheriff could be putting him in the situation of a "political prisoner in a foreign land." Exhibit 4 at 2, Exhibit 5 at 2. The defendant has already shown that he will engage violence against those whose authority he does not recognize, and in his letters is once again saying that he does not recognize the authority of the federal government.

In addition to the continuing danger that he poses to the community, the defendant remains a flight risk. The defendant is unemployed and has unstable housing, with few ties to the community. The defendant was recently residing with W-2, and then moved into another property owned by W-2. There is evidence that the defendant recently changed his appearance by growing a beard. *Compare* Exhibit 3A (screenshot from YouTube Interview on January 6, 2021) with Exhibit 3B (MPD Arrest Photograph, February 16, 2021).

15

*Exhibit 3A*



*Exhibit 3B*



W-2 advised that it had never seen the defendant with a beard "in 50 plus years." Furthermore, when the defendant was arrested, he was driving a GMC Yukon that belonged to the defendant's deceased father – not his own Toyota Highlander (which was photographed driving into the District of Columbia on January 5, 2021). W-2 advised that the GMC Yukon had been parked at the defendant's family farm in West Virginia. Notably, W-2 also advised that it thought it was odd that the defendant was driving a different vehicle. W-2 could not recall the defendant driving the vehicle in the past.

The defendant is unable to control himself, and he acts violently towards others. His words and actions demonstrate he not would recognize the authority of this Court, let alone respect its orders. Thus, the Court can rest assured that there is no combination of conditions of release that could reasonably assure the safety of the community, or that the defendant will appear in the District of Columbia, as required.

## CONCLUSION

Defendant was not a protestor swept up in the swagger of a violent mob – he was a violent instigator. He is unmoored, with little to connect him to the community, and little regard for the authority of the federal government. It is clear that the defendant is both a danger to the community and a risk of flight. Considering all of the factors set forth above, there is no combination of conditions that will reasonably assure his appearance in the District of Columbia and/or the safety of the community. The defendant should therefore be detained pending trial.

WHEREFORE, the government respectfully submits that its Motion for Pretrial Detention should be granted.

Respectfully submitted,

Michael R. Sherwin
Acting United States Attorney
New York Bar No. 4444188

*/s/ Colleen D. Kukowski*
Colleen D. Kukowski
DC Bar No. 1012458
Colleen.Kukowski@usdoj.gov
Michael C. Liebman
D.C. Bar No. 479562
Michael.Liebman@usdoj.gov
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2646 (Kukowski)
(202) 252-7243 (Liebman)

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention was served on all counsel of record via the Court's electronic filing service.

 _/s/ Colleen D. Kukowski_
COLLEEN D. KUKOWSKI
Assistant United States Attorney

Date: February 19, 2021