**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 21-CR-177 (CRC)** |
| | : | |
| | : | |
| **DANIEL D. EGTVEDT** | : | |

**DEFENDANT'S MOTION TO REVOKE ORDER OF DETENTION OF U.S.**
**MAGISTRATE JUDGE AND TO MODIFY BOND CONDITIONS**

The Defendant, Mr. Daniel D. Egtvedt, by and through his attorney Kira Anne West, files this appeal of his detention pursuant to 18 U.S.C. § 3145 (b)  and respectfully requests that he be released with certain conditions and supervision through the High Intensity Supervision Program (HISP) with GPS monitoring by Greenbelt, Maryland Pretrial Services. Mr. Egtvedt would also be amenable to house arrest if the Court deemed it necessary. In support of this motion, the Defendant submits the following:

**BACKGROUND**

The Defendant, Mr. Egtvedt, is fifty-seven years old and a father, brother, and son.  He is a graduate of Michigan State University.  Mr. Egtvedt worked successfully for twenty-two years as a pharmaceutical salesman. He is currently retired and recently moved from Virginia to Western Maryland to assist in caring for his 85-year-old mother who is suffering from moderate. Alzheimer's disease. Both Mr. Egtvedt and his brother Rick, a retired Air Force Colonel and Lutheran minister, have taken on her caregiving.  Mr. Egtvedt is also a father to Logan, who is currently in his senior year at Virginia Commonwealth University scheduled to graduate in May. Mr. Egtvedt's health is affected by certain medical issues but his conditions are controlled

through the use of medication and a BiPAP machine. Mr. Egtvedt has zero criminal history.

## PROCEDURAL HISTORY

On February 13, 2021, Mr. Egtvedt was arrested in Western Maryland and charged by criminal complaint with Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority pursuant to 18 U.S.C. §§ 1752(a)(1), (a)(2); Violent Entry and Disorderly Conduct on Capitol Grounds pursuant to 18 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G); and Obstructing a Law Enforcement Officer During a Civil Disorder pursuant to 18 U.S.C. § 231(a)(3). No search warrant was done on his home because presumably there was no danger to the community.

At Mr. Egtvedt's  initial appearance, the Government argued for detention pursuant to 18 U.S.C. § 3142(f)(2)(B).  A detention hearing was held February 23rd, 2021, wherein Mr. Egtvedt was represented by another defense attorney and although pretrial services recommended conditions that would assure his presence at trial and the safety of the community, the Magistrate Judge ultimately granted the detention motion.  *See*  Ex. 1, Pretrial Services Report.

On March 3, 2021,  Mr. Egtvedt was charged by indictment with multiple counts arising out of his alleged participation in the events that occurred at the United States Capital on January 6, 2021.

## STATEMENT OF FACTS

### A.  Storming of the Capitol on January 6, 2021

On January 5, 2021, Mr. Egtvedt drove by himself from Western Maryland  to the District and stayed at a hotel.  The following day, Mr. Egtvedt walked to the "Save America" rally at the Ellipse in President's Park to listen to various speakers, including former President Donald Trump. On January 6, 2021, Mr. Egtvedt attended the "Save America" rally where former

2

President Donald Trump spoke. During his speech, President Trump encouraged attendees to march to the Capitol to protest the Electoral College certification of the results of the 2020 Presidential Election. Mr. Egtvedt was unaware of any march on the Capital until the President of the United States told his supporters to " peacefully and patriotically make your voices heard" and "we are going to the capital."  Sam Cabral, *Capitol riots: Did Trump's words at rally incite violence?*, BBC NEWS (Feb. 14, 2021), https://www.bbc.com/news/world-us-canada-55640437.

Mr. Egtvedt was at the Ellipse to protest an election which Trump claimed had been fraudulently  stolen.  He wore street clothes and carried no weapons or any items whatsoever. He did not wear any clothing with political slogans or symbols. Following Trump's long speech, Mr. Egtvedt marched with the crowd to the perimeter of the Capitol.  On January 6, 2021, the Capitol was first breached at around 1:00 p.m., a full hour and forty-seven minutes before Mr. Egtvedt allegedly arrived on the scene, not at 2:47 as the government stated in their summary FBI affidavit signed by Magistrate Judge Faruqui. *See* ECF. No. 1 , ¶ 12. Laurel Wamsley, *What We Know So Far: A Timeline of Security Response At The Capitol On Jan. 6*, NPR (Jan. 15, 2021, 5:00 AM), https://www.npr.org/2021/01/15/956842958/what-we-know-so-far-a-timeline-of-security-at-the-capitol-on-january-6.

 The government claims that the defendant assaulted police officers. The person the government claims is Mr. Egtvedt is violently assaulted by police officers, not once, but twice. *See* Ex. 3, Hall of Columns MP4 (1:03)[1]; Ex. 4 , South door vestibule.mp4 (2:00). As Mr. Egtvedt was pushed down by at least nine different police officers, his head ricocheted off a marble column and he fell to the ground. He remained unconscious and motionless for several

---

1 Mr. Egtvedt never said to anyone "to shoot him" as described in ¶16 of the affidavit, ECF No. 1.

seconds,[2] if not minutes. When Mr. Egtvedt finally came to, he was bleeding and he asked for

medical attention, but was not offered any assistance by any person.[3]  The AUSA describes Mr.

Egtvedt as then being "move[d]  out of the Capital building, …". *Id.* at 9. In reality, Mr. Egtvedt

was picked up and tossed through the doors by two police officers as if he were a rowdy patron

being kicked out of a nightclub. Again, during all of this he is bleeding and pleading for help.

He got none. *See* Ex. 4. Immediately preceding this assault, in one of the videos he is seen

pointing to officers telling them "God Bless all of you." *See* Ex. 5 DaCruz BWC.mp4 (0.15).[4]

**B.  Time Following Storming of the Capitol**

From January 6, 2021, to the date of his arrest, February 13, 2021, the defendant went

about living his life as he has the almost previous two years.  On the date of his arrest, February

13, 2021, Mr.  Daniel Egtvedt was distressed that his mother was getting the vaccine because his

brother Richard had agreed previously to discuss it with him.  His brother Rick told the

defendant if he didn't agree with their mother getting the vaccine, he would call the police. The

defendant pleaded with him not to give their mother the vaccine. Rick Egtvedt then called the

police. Several officers responded to the call.  Officers talked to both parties, then left the

premises that day leaving Daniel Egtvedt home without filing charges or even hinting that Mr.

---

[2] Defense counsel cannot discern seconds vs. minutes here because although she has requested
the entirety of these videos and BWC, they have not been turned over yet by the government.
[3] The little discovery defense counsel has has come in piecemeal without one complete video so
it is impossible to create a timeline of events. There are no time stamps on most of the discovery.
[4] The FBI getting the facts wrong in affidavits is nothing new. Describing what happened to
Carter Page, a revered judge of this Court stated the following:  "The frequency with which
representations made by FBI personnel turned out to be unsupported or contradicted by
information in their possession, and which they withheld information detrimental to their case,
calls into question whether information contained in other FBI applications is reliable."  *In re
Accuracy concerns regarding FBI matters submitted to the FISC*, 411 F. Supp. 3d 333 (D.D.C.
2019)(J. Collyer). So not trusting your government is not so unusual.

Egtved could later be charged with anything.   Defendant  never raised a hand or his voice. His brother took his mother for her shot. Later that afternoon, defendant took his mother shopping as he often did.

 Mr. Egtvedt does not have  severe "mental issues" as prior defense counsel stated in her presentation to the Magistrate Judge.5  This, unfortunately, was not fully investigated or defined for the Magistrate Judge at the hearing6. He has not taken the vaccine for COVID-19 which poses an additional risk to his health.

**ARGUMENT**

**A. Pretrial Release Is Proper In This Case Because Conditions Are Available Which Will Reasonably Assure The Defendant's Presence At Trial And The Safety Of The Community.**

The Bail Reform Act, 18 U.S.C. § 3142 et.seq., authorizes the detention of defendants awaiting trial on a federal offense only under certain, limited circumstances. 18 U.S.C. § 3142. Under the Act, a judicial officer may issue order that, pending trial for a federal offense, a defendant be: (1) released on personal recognizance or upon an execution of an unsecured bond; (2) released on a condition or combination of conditions, (3) temporarily detained; or (4) detained. The Act mandates pretrial release on personal recognizance or unsecured bond ("shall order the pretrial release. . . .", 18 U.S.C. § 3142(b)) unless the court determines that no condition or combination of conditions will reasonably assure the person's appearance or the

---

5 If released there will be no problems getting Mr. Egtvedt back into care.  If he cannot return to treatment within several weeks, by policy he will have to be discharged according to the WVU Health and Wellness Behavioral Center in Oakland, MD.  A discharge will result in a greater delay in placing him back into subsequent treatment.

6 The government also claims that there was discussion at the home between defendant's brother Richard Egtvedt and the police about involuntarily committing the defendant. This is patently false.

safety of any other person and the community. 18 U.S.C. § 3142(e). When personal recognizance or an unsecured bond is determined to be inadequate to guarantee appearance or safety, the Act still mandates release ("shall order the pretrial release. . . .", 18 U.S.C. § 3142(c)) subject to specified conditions. The conditions must be the least restrictive conditions necessary to reasonably assure the  defendant's appearance and the community's safety. *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985), cert. denied, 479 U.S. 950 (1986).

     1.  <u>The Bail Reform Act</u>

     The Act provides that if the Court finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order detention of the person before trial." 18 U.S.C. §§ 3142(e)(1), (f)(2)(g). However, there is a strong presumption against detention. *See United States v. Hassanshahi*, 989 F. Supp. 2d 110, 113 (D.D.C. 2013) (citing *United States v. Hanson*, 613 F. Supp. 2d 85, 87 (D.D.C. 2009); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). Courts have held that a finding that defendant is a danger to the community or a serious flight risk is a basis of detention. *See United States v. Anderson*, 177 F. Supp. 3d 458, 461 (D.D.C. 2016) (*citing United States v. Salerno*, 481 U.S. 739, 755 (1987). The finding must be based on clear and convincing evidence that the defendant poses a danger to the community or a preponderance of the evidence to support the defendant's likelihood to flee. *See id.*; *see also United States v. Xulam*, 318 U.S. App. D.C. 1, 84 F.3d 441, 442 (1996) (citing *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)).

     Congress enacted the Bail Reform Act of 1984 to give courts the authority to consider factors

such as the likelihood of flight and community safety in making release determinations. In passing the Act, Congress did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses. Indeed, the Act expressly provides that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S. Code § 3142(j). To the contrary, the passage of the pretrial detention provision of the 1984 Act bespeaks a recognition that "there is a small but identifiable group of particularly dangerous [persons] as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group ... that the courts must be given the power to deny release pending trial." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted in U.S. Code Cong. & Ad. News 3189 (emphasis supplied).

The legislative history of the Act also stresses that '[t]he decision to provide for pretrial detention is in no way a derogation of the importance of the [accused's] interest in remaining at liberty prior to trial. It is anticipated that [pretrial release] will continue to be appropriate for the majority of federal defendants." Id. at 7, 12, reprinted in, 1984 U.S. Code Cong. & Ad. News 3189. Courts have recognized that, consistent with the intent expressed in the 1984 Act's legislative history, the statutory scheme of Section 3142 continues to favor release over pretrial detention. *See, United States v. Orta*, 760 F.2d 887, 890-892 (8th Cir. 1985); *United States v. Miller*, 625 F. Supp. 513, 516-17 (D.Kan. 1985).

Notwithstanding the charges at issue, Mr. Egtvedt should not be considered to be within that limited group for whom pretrial detention is appropriate. It is apparent from the Act's legislative history, as well as the statutorily mandated consideration of the least restrictive alternatives to detention, that Congress contemplated pretrial detention of only a small percentage of the

7

individuals awaiting trial. Mr. Egtvedt is among that majority for whom a combination of conditions short of detention without bond can be fashioned to "reasonably assure" the safety of the community and his appearance for trial. *United States v. Orta*, 760 F.2d 887 (8th Cir. 1985); *see also* 18 U.S.C. §3142(c)(1)(B) (judicial officer shall order the pretrial release of an accused "subject to the least restrictive further condition or combination of conditions, that such judicial officer shall determines will reasonably assure the appearance of the person as required and the safety of any other person and the community") (emphasis supplied)). In the instant case Defendant's continued detention without bond is not the least restrictive alternative case; there are conditions available that will assure the community's safety and his return for future court dates. *See U.S. v. Xulam*, 84 F.3d 441 (D.C. Cir. 1996) (holding that the pretrial detention provisions of the 1984 Bail Reform Act were not intended to apply to "first-time offender accused of a nonviolent crime with strong community ties and respected members of that community willing to supervise his release").

Title 18 U.S.C. Section 3142(e) provides for pretrial detention if the government is able to show that no condition of release will reasonably assure the accused's appearance as required and the safety of any other person or the community. See, *United States v. Salerno*, 481 U.S. 739, 741 (1987). Here there are conditions available which will reasonably assure the defendant's presence and safety of the community. There is no reason to believe that a person with no prior record of criminal activity, violence, or flight, who is currently retired and serving as caretaker for his 85-year-old mother suffering from Alzheimer's disease, must be preventively detained because his release poses an unreasonable risk of flight or danger to the community.

2. <u>Considerations by the Court</u>

To determine whether the conditions of release will reasonably assure a defendant's future presence in court, the following factors are considered: "(1) the nature and circumstances of the offense charged… (2) the weight of the evidence against the person; (3) the history and characteristics of the person… (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4).[7] Mr. Egtvedt submits that when considering these four factors, the order of detention should be vacated and this Court should set conditions of release in this case. There are several factors in the instant case which demonstrates there are conditions of release that would both guarantee Mr. Egtvedt's appearance and assure the safety of the community.

A. The nature and circumstances of the offense charged….

This Court must consider the seriousness of the offense. See 18 U.S.C. § 3142(g)(1). Because of the unique nature of the alleged crime, the particular conduct of each defendant for purposes of pretrial detention is considered under many factors. See, e.g., Chrestman, 2021 WL 765662, at *7–9. Those factors include whether a defendant (1) has been charged with felony or misdemeanor offenses; (2) engaged in prior planning before arriving at the Capitol; (3) carried or used a dangerous weapon during the riot; (4) coordinated with other participants before, during, or after the riot; or (5) assumed a formal or informal leadership role in the assault by encouraging other rioters' misconduct; and (6) the nature of the defendant's words and movements during the

---

[7] 18 U.S.C. § 3145(b) does not specify the standard of review to be applied by a district court reviewing a magistrate judge's detention order, and "the D.C. Circuit has not yet addressed the issue." United States v. Hunt, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017). That said, both the BRA and the Federal Magistrates Act, 28 U.S.C. § 636, support the conclusion, reached by every circuit to have considered the question, that a district court reviews a magistrate judge's release or detention order de novo. See United States v. Chrestman, 21-mj-218 (BAH), 2021 WL 765662, at *5–6 (D.D.C. Feb. 26, 2021). And courts in this District routinely apply that standard. See id. at *6; Hunt, 240 F. Supp. 3d at 132–33.

riot, including whether the defendant damaged federal property, threatened or confronted law enforcement, or celebrated efforts to disrupt the certification of the Electoral College vote. *Id.* Here, those circumstances weigh in favor of release. Mr. Egtvedt has not been identified in any of the videotapes or photographs. Assuming the government can identify him,  Mr. Egtvedt never caused any damage to the Capitol area and never committed any act of violence. Although Mr. Egtvedt is charged with both misdemeanors and felonies, at no time did Mr. Egtvedt use violence against anyone.[8] On the contrary, he himself was assaulted by the police, not once, but twice.  He was bleeding and requested medical help and received none from any officer.  He is also seen on videos telling the officers that they were "heroes."  *See* Ex. 5.  He is charged primarily with offenses that relate to being on restricted Capitol grounds. These are non-violent offenses and the video sequences show his actions to be non-violent. Importantly, he went to the Capitol by himself, had no leadership role, did not engage in prior planning, was not part of any conspiracy, did not coordinate with anyone, and was not aligned with any group before or after January 6, 2021. Unlike others, he did not have a weapon, handcuffs, flex cuffs, or any other type of object that could be used against another person. He simply went to hear the speeches and exercise his constitutional right to protest. He never encouraged misconduct by others, but encouraged them to come protest.  He never damaged federal property, never threatened law enforcement and had nothing to say about the Electoral College.  What the video exhibits show

---

[8] The Bail Reform Act defines "crime of violence" as (A) "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, " (B) "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," or (C) "any felony under chapter 77, 109A, 110, or 117." 18 U.S.C. § 3156(a)(4).

is that the proffer by the government at the detention hearing and the affidavit in support of the complaint and arrest of Mr. Egtvedt are full of misrepresentations.

B. <u>The Weight Of The Evidence Against The Person</u>

The evidence is not as the government has alleged against Mr. Egtvedt. So far, what the government has provided to the Court regarding January 6, 2021 are still shots taken from various videos. They are taken out of context. When this Court watches the approximately ten minutes of video footage provided by the defense, the Court will see that the police actually assaulted Mr. Egtvedt and that he was peaceful. No police officer came to his aid although he was on the floor unconscious and bleeding. In fact, the video depicts a lack of concern or empathy by any law enforcement officer. Other than perhaps a common law trespass, the other charges will not hold up at trial. Unlike others, he neither took anything from any desk, went into an office, nor did he damage any part of the Capitol. The weight of the evidence leans in favor of release.

At his detention hearing, the Government stated that Mr. Egtvedt was part of a "violent mob" as well as a part of the "initial wave...overwhelming law enforcement." *See* Ex. 2, Transcript of detention hearing, Transc. @ p. 5. On the contrary, there is no evidence that Mr. Egtvedt was part of a violent mob. Rather, he found himself surrounded by thousands of people protesting and at that time, he still believed he was engaged in a peaceful protest. Mr. Egtvedt has not yet been identified and the arguments put forth here are not a waiver of his identification.

Contrary to the FBI affidavit, no officers are seen injured in any of the videos[9] (finally given to defense counsel after numerous requests on March 17, 2021) wherein the government

---

[9] The video exhibits will be filed under seal until the Court grants the new protective order which should be filed within a couple of days of the filing of this motion.

claims to identify Mr. Egtvedt.  Furthermore, there is no video evidence that the Hall of Columns was being used to escort people out of the capitol.

The  facts as described by the government at the detention hearing regarding  the vaccine situation in Garrett County are much different than what police reports indicate.  Daniel Egtvedt was left at home on February 13, 2021, by police after the disturbance call by his brother. Later that afternoon, he took his mother shopping after she returned home from getting her vaccine. If his brother Richard believed him to be a danger, he would never have allowed that. Rick told defendant that  he would call the police about their disagreement regarding his mother's vaccine and he did.  Defendant  was not "unruly and so physically preventing the family member from taking that elderly family member to the Covid vaccination…."  as the AUSA described. Ex. 2 @ p. 12. No police report from that day describes him as unruly or states that he "physically" prevented anyone from going anywhere. Reports and notes from all officers on the scene of his arrest regarding the vaccine incident with his mother say nothing of  physical acts or violence— only that they were talking calmly to Mr. Egtvedt.   The Government's argument that Mr. Egtvedt tried to alter his appearance because he "grew a beard" is unfounded. Ex. 2  @ p. 15. Half of the men in America have grown beards during the last year in response to the pandemic. It is  also patently false that Mr. Egtvedt didn't  before drive his deceased father's vehicle. It was the farm vehicle and he was moving his things back and forth. Unfortunately, these issues were not subject to cross-examination because the government was allowed to proffer their entire case. Here the government omits facts critical to understanding what really went on that day. Instead of doing an investigation, it reaches for unsupported allegations and conclusions.

C. History And Characteristics Of The Person, Including…The Person's Character, Physical
And Mental Condition, Family Ties, Employment, Financial Resources, Length Of Residence
In The Community, Community Ties, Past Conduct, History Relating To Drug Or Alcohol

Abuse, Criminal History And Record Concerning Appearance At Court Proceedings.

These facts heavily favor release. He has no criminal history. After January 6, Mr. Egtvedt stayed in the area of his home and took his mother shopping even after being questioned by law enforcement earlier on the day of his arrest. His behavior between January 6, 2021 and February 13, 2021 did not change. His actions do not indicate an intent to flee or any danger. There is nothing in his history nor in the history of his actions in this case that show an inclination to flee or towards danger to the community. He has never abused drugs or alcohol. He has sufficient financial resources. The Government introduced the fact that Mr. Egtvedt was driving the "farm" vehicle and didn't shave against him, claiming that he did so as an attempt to hide his identity. This is preposterous. Mr. Egtvedt often doesn't shave and drove the farm vehicle frequently, and at this time to move items back and forth from his home to the farm. Again, these facts were not properly developed.  The government has couched this behavior as a one-time action, which is false. Virtually all of Mr. Egtvedt's familial, professional, and social ties are in the area of Western Maryland where he currently resides. He lived in Virginia until two years ago when he sold his home and retired. Since his ties to the community are substantial, there is no reason to think that he would flee or not return to court when given notice to do so.

 Notwithstanding that others find the Defendant's beliefs to be irrationally based, it is clear that the he was not acting out of criminal intent. In the heat of the moment, after you've likely suffered a concussion,  you  may forgo reason and listen to those around you.  It is easy to substitute passion for reason. Many people can't abstractly reason in different circumstances and this situation is no exception. When people cannot apply reason to a concept, they stop reasoning. People do this all the time: you can give them a reasoning process, and especially if they are suffering from a head injury,   they can't apply it rationally.  *See* John Locke, *An Essay*

*Concerning Human Understanding* (1690)**.**

> D. The Nature And Seriousness Of The Danger To Any Person Or The Community That
> Would Be Posed By The Person's Release.

Again, Mr. Egtvedt is a nonviolent person and this does not apply.

**B.  The Defendant Should Be Released Because The Proffer Made By The Government
At The Pretrial Detention Hearing Was Not Based On Facts.**

Although the rules allow the Government to proceed by proffer in a detention hearing, the

statements made by the Government are patently false and assume facts not in evidence. Mr.

Egtvedt is innocent until proven guilty, but the government has painted every person arrested in

the January 6, 2021 storming of the capital as a domestic terrorist which is not only incorrect, but

unconstitutional. Mr. Egtvedt absolutely denies being part of a "violent attempted overthrow of

the U.S. Government" or that "he, himself, was trying to bring about an overthrow of the

government." Ex. 2 @ p. 3. This is patently false. There is absolutely no evidence that Mr.

Egtvedt was associated in any way with anyone at the Capitol, let alone any information that

before that day he planned any type of overthrow or violence. This averment by the government

is absurd. In fact, Mr. Egtvedt was himself assaulted not once, but twice by the police. Mr.

Egtvedt never assaulted any police officers. Mr. Egtvedt never caused any injury to any officer.

This is clearly shown in the videos. *See* Exhibit 3, Capitol Hall of Columns Video.

**C.  Conclusion**

Mr. Egtvedt sought no personal or pecuniary gain from his actions. Rather, he acted out of

the sincere belief that he was a "patriot" protesting for his country. Like thousands of others, Mr.

Egtvedt was responding to the entreaties of the then Commander-in-Chief, former President

Donald Trump. The President maintained that the election had been stolen and it was the duty of

loyal citizens to "stop the steal." Defendant did not act out of criminal intent but out of sense of

conscience.  His solitary action in this case, measured against his history of being a law-abiding

citizen for the last 57 years, safely predicts that he is more likely to resume behaving as a law

abiding citizen if released pending trial. His history does not suggest that he is likely to resume

the type of alleged  behavior that brings him before this Court. Notwithstanding that Mr. Egtvedt

has been indicted he is still presumed innocent. His ability to prepare a defense will be hampered

by his pretrial incarceration and currently it is nearly impossible to speak to Mr. Egvedt more

than once a week because the jail staff are overwhelmed with requests for video calls. Reviewing

the evidence alongside a client during the COVID-19 pandemic is a near impossibility because

undersigned counsel cannot travel to the jail  and because of the protective order in place.

　　　**WHEREFORE** for the foregoing reasons, and any others which may appear at a full hearing

on this matter, and any others this Court deems just and proper, Defendant through counsel,

respectfully requests that he be released on personal recognizance. If that request is denied

Defendant requests as an alternative that he be released on Third Party Custody and placed into

the High Intensive Supervision Program of the Pretrial Services Agency conditioned on

reasonable conditions.

　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　KIRA ANNE WEST


　　　　　　　By:　　_____/s/_____

　　　　　　　　　　Kira Anne West
　　　　　　　　　　DC Bar No. 993523
　　　　　　　　　　712  H Street N.E., Unit  509
　　　　　　　　　　Washington, D.C.  20002
　　　　　　　　　　Phone:  202-236-2042
　　　　　　　　　　kiraannewest@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on the 24th day of March, 2021, a copy of same was delivered to the

parties of record, by email  pursuant to the Covid standing order and the  rules of the Clerk of

Court.

_____/S/_____

Kira Anne West

16