**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE NO. 21-CR-177 (CRC)** |
| | : | |
| **DANIEL DEAN EGTVEDT** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DENTION AND MODIFY BOND CONDITIONS

The United States, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant's Motion to Revoke Order of Detention of U.S. Magistrate Judge and Modify Bond Conditions. The government respectfully opposes the Defendant's motion and asks that the defendant, Daniel Egtvedt, remain detained pending trial.

In support of its opposition, the government incorporates the arguments in its previous motion for detention filed on February 19, 2021 (ECF No. 6, 20-mj-212 (ZMF)) (hereinafter "Government's Detention Memorandum").

## PROCEDURAL HISTORY

On February 9, 2021, the defendant was charged by complaint with: 1) 18 U.S.C. § 111(a)(1) - Assault on a Federal Officer or Person Assisting a Federal Officer; 2) 18 U.S.C. § 231(a)(3) - Obstruction of Law Enforcement During Civil Disorder; 3) 18 U.S.C. § 1512(c)(2) - Obstruction of Justice/Congress; 4) 18 U.S.C. § 1752(a)(1), (2) & (4) - Unlawful Entry, Disorderly Conduct, and Physical Violence into/in/on Restricted Building or Grounds; and 5) 40 U.S.C. § 5104(e)(2)(D) & (F) - Disorderly Conduct and Physical Violence on Capitol Grounds. On

February 16, 2021, at the defendant's initial appearance, the government orally moved for the defendant's detention pending trial pursuant to § 3142(f)(2) of the federal bail statute.   Magistrate Judge G. Michael Harvey presided over a detention hearing on Tuesday, February 23, 2021.   After hearing the proffers of the government and the defense, as well as statements from the defendant's brother, a proposed third party custodian, Magistrate Judge Harvey found "by clear and convincing evidence that I cannot fashion conditions or combination of conditions that would reasonably assure the safety of the community," and ordered the defendant held pending trial.   *See* Exhibit 1, Transcript, February 23, 2021 Detention Hearing

On March 3, 2021, the defendant was indicted on eight charges for his conduct on January 6, 2021.   The defendant was charged with: two counts of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); one count of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); one count of Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§  2, 1512(c)(2); one count of Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); one count of Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4); and one count of Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.SC. § 5104(e)(2)(F).

## FACTUAL BACKGROUND

This Court is already familiar with the factual background of this case from the Government's Detention Memorandum. Below, we proffer additional evidence as it relates to the defendant's conduct from that January 6, 2021.

*Defendant's Cell Phone*

The defendant was arrested in a vehicle that belonged to his deceased father, and which he recently began driving after he returned from the January 6, 2021 riots.[1]   Law enforcement seized the defendant's cell phone, which was located in his deceased father's vehicle at the time of the defendant's arrest, and searched the device pursuant to a search warrant.[2]

While the extract from the defendant's cell phone was only recently received, an initial review of its contents show that the defendant had photographs that were geotagged to Washington D.C. on January 6, 2021 and January 7, 2021.   One photograph, shown below, appears to show law enforcement at the U.S. Capitol.



Another photograph, shown below, appears to show the defendant at the Willard InterContinental Hotel.   The photograph, which had a capture time of January 7, 2021 at 11:50 am, corroborates

---

[1] Notably, the defendant drove his personal vehicle to Washington, D.C. on January 5, 2021.
[2] The defense argues that no search warrant was done on the defendant's home because "presumably there was no danger to the community."   As the Court is aware, search warrants are executed when there is probable cause of evidence of a crime being located within a specified location or item; they are not issued by a judge based upon a defendant's dangerousness.   In this case, the defendant was not arrested at a residence; he had in fact recently changed residences at the time of his arrest.

hotel records from the Willard Intercontinental.   The hotel record indicate that the defendant stayed at the hotel the evenings of January 5, 2021 and January 6, 2021, and cited "Women for America First" as his "company," with an accompanying group code.   While the "selfie" style photograph may be unexceptional, it is worth noting that the defendant's shirt appears to state, "God gave his archangels weapons because even the Almighty knew you don't fight evil with tolerance & understanding."   The "angel" on the shirt appears to be holding a long firearm.



        Additionally, the government located a selfie style video in which the defendant appears, wearing a plaid collared shirt and dark jacket, consistent with is appearance in videos discussed in the Government's Detention Motion.



In the video, the defendant states, "Capitol Police just sprayed me in the eyes twice.  I've gone through training before for spray, you're not supposed to put in the eyes.   They put it in the eyes, the traitors."

*Additional Body Worn Camera Footage*

In addition to the body worn camera ("BWC") footage from Officer M.D. and those in the Hall of Columns, the government located BWC footage from two Metropolitan Police Department ("MPD") who were verbally accosted by the defendant at 3:09 pm on January 6, 2021 – mere minutes before the defendant entered the Hall of Columns and assaulted Officers M.D. and M.M. In the BWC footage, the defendant approaches officers M.F. and J.A., who were standing against a wall before they made their way to an exterior portion of the Capitol building.   The defendant walks up to the officers, aggressively pointing at them and screaming, "This is the United States of America, and you are on the wrong fucking side."   The defendant then walked up to a second group of law enforcement officers and appears to aggressively get in their faces, forcing one officer to push the defendant away from him.

## ARGUMENT

A Magistrate Judge in the United States District Court for the District of Columbia has already presided over a detention hearing for the defendant, evaluated the evidence proffered at the hearing, and determined that the defendant should be held.   Contrary to the defendant's claims that he was akin to a rowdy patron at a nightclub, the defendant was a violent grown man who trespassed into the U.S. Capitol when it was closed to the public, interfered with and obstructed Congress's attempts to accomplish its official duties, berated law enforcement who were attempting to protect the Congress and Capitol, and then assaulted law enforcement officers. When law enforcement finally succeeded in removing him from the Hall of Columns vestibule to outside, he tried to force his way back into the building, and assaulted a U.S. Capitol Police Officer for a second time.   Ironically, according to the defendant's "selfie" video on his phone, he considered these officers to be "traitors."   Magistrate Judge Harvey considered the four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial, and determined he should be held.   As discussed below, a consideration of these factors shows that the defendant should remain held.

### Nature and Circumstances of the Offense Charged

As Chief Judge Howell has noted, "Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot, thereby encouraging others to engage in such conduct. These factors measure the extent of a defendant's disregard for the institutions of government and the rule of law, qualities that bear on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community." *United States v. William Chrestman*, 21-mj-

218 (ZMF), ECF No. 23, at 16.   Here, the defendant did not just confront or threaten law enforcement officers, he assaulted them and impeded their ability to do their jobs.

As Magistrate Judge Harvey found, the defendant appeared to be "part of a group of an initial wave of a violent mob that went into the Capitol, reached one of the entrances into the Capitol; that this defendant was part of that group."   Exhibit 1, at 34.   Indeed, records for the defendant's cell phone number indicate that he was first in or near the U.S. Capitol building at 2:37 pm, and Parler video shows him the threshold of an entrance to the U.S. Capitol at approximately 2:47 p.m.[3] Magistrate Judge Harvey also stated he had "no problem" finding probable cause that the defendant "engaged in multiple instances of assaultive conduct, by anyone's definition: charging, hitting, swatting, pushing law enforcement officers who are clearly doing their job in trying to remove him from the Capitol."   *Id*.   Magistrate Judge Harvey further noted that "a lot of the assaults on the law enforcement -- or all of them appears happened after he had been peppered sprayed, once, maybe twice, and he persisted in engaging in violence at the Capitol."   *Id*.   Magistrate Judge Harvey concluded, "So as I read it, the alleged conduct does not suggest some momentary lapse of reason, some being caught up in the mob, but an individual who engaged in active, sustained violent conduct at the beginning and -- and looks like the 30 to 45

_____

[3] The defendant claims that the government is mistaken and that the U.S. Capitol was first breached at around 1:00 pm, and cites to a National Public Radio article dated January 15, 2021.   Laurel Wamsley, What We Know So Far: A Timeline of Security Response At The Capitol On Jan. 6, NPR (Jan. 15, 2021, 5:00 AM), https://www.npr.org/2021/01/15/956842958/what-we-know-so-far-a-timeline-ofsecurity-at-the-capitol-on-january-6. According to the article, however, an NPR reporter stated that at around 1:00pm, "We see this huge crush of people coming down Pennsylvania Ave. toward the Capitol.   We follow the crowd as it goes up to the Hill, toward the Capitol. There's scaffolding set up for the inauguration already. But as far as protection, all we really saw were some mesh barriers, some metal fencing and only a small contingent of Capitol Police. And we watched them being quickly overwhelmed."   The defendant thus appears to be referring to when protestors first approached the Capitol grounds, whereas the government's concern with Mr. Egtvedt is that he was among the first waves of rioters who forced their way into the building while members of Congress were still present and attempting to evacuate.

minutes after the beginning of the assault on the Capitol." *Id.* at 35.   The nature of the defendant's conduct and offense thus weighs in favor of his detention.

## Weight of the Evidence Against the Defendant

The weight of the government's remains overwhelming.   Magistrate Judge Harvey cited the government's "very strong" and "overwhelming evidence, noted that the screenshots of the videos alone were "compelling," recognized that the defendant was identified by individuals who knew him well, and recognized that the government has electronic evidence that placed the defendant at or inside the Capitol that day.   *Id.* at 35 – 36.

The defendant's motion attempts to distract from the weight of the government's evidence by pointing to things the defendant is not charged with – such as stealing property from desks within the Capitol or damaging part of the Capitol.   The defendant argues that law enforcement assaulted the defendant, when in fact they had to force him out of the building after he left the Hall of Columns, then reentered, and charged at and began assaulting the female law enforcement who stood in his way when he tried to re-enter the building.   The defense's motion alleges that the defendant was "peaceful," though the defendant fails to explain how the defendant's forced entry into the restricted Capitol was in fact peaceful.   Defendant's Motion at 11.   The defendant claims that that he has "not yet been identified," despite the fact that Witness 1 and Witness 2 both identified him in images from the Capitol.   Moreover, as discussed above, a selfie video from the defendant's phone appears to show him in the Capitol on January 6, 2021, discussing how he was pepper sprayed.   In short, the defendant attempts to shift the focus from the government's clear and objective evidence to irrelevant issues.   The government's evidence remains overwhelmingly strong, and clearly weighs in favor of detention.

## Defendant's History and Characteristics

The defendant's recent history and characteristics also support the defendant's continued detention. Magistrate Judge Harvey and the government acknowledged that the defendant has no criminal history and no history of non-compliance.   Nevertheless, Magistrate Judge Harvey found that there was a record "that the defendant has a very hard time controlling himself," and stated that concerned the Court.   Exhibit 1, at 36.   This concern over the defendant's lack of control, particularly in light of the defendant's recent violent conduct, weighs in favor of his continued detention.

## Danger to the Community and Flight Risk

In deciding to hold the defendant, Magistrate Judge Harvey stated that he was ultimately trying to determine if there was something that could be done to reasonably assure the safety of the community.   Exhibit 1 at 36.   The Court explained that it was concerned about the defendant's intent, his interviews, and the letters that the defendant wrote to the Sheriff in Garrett County, Maryland, which suggested that "this defendant does not even recognize at this point the present administration and the authority of the government." *Id*. at 37.   Magistrate Judge Harvey expressed concern that the defendant believed that members of Congress who were doing their jobs were traitors, and justified what he did that day, and specifically noted that this did not appear to just be a momentary lapse of reason on the defendant's part. *Id*.   Magistrate Judge Harvey found that according to the government's evidence, the defendant "persists in his belief that there are, to use his words, historical events currently in play." *Id*.   Magistrate Judge Harvey continued to find that the defendant believes that he is a political prisoner in a foreign land, so nothing has changed." *Id*.   Magistrate Judge Harvey concluded, "The same events apparently that have caused him to do what he's done continue." *Id*.

9

Magistrate Judge Harvey's findings thus are consistent with the United States Court of Appeals for the District of Columbia Circuit's recent decision in *United States v. Munchel*, No. 21-3010, 2021 WL 1149196, (D.C. Cir. Mar. 26, 2021).   As an initial matter, the defendants in Munchel were not accused of committing acts of violence, whereas the defendant has been indicted for assaulting two law enforcement officers, among other charges.   Critically, however, the defendant's continued threat to the U.S. government, as evidenced by his references to the ongoing historical events at play, his lack of recognition of the U.S. government, and his opinion that members of the government and/or law enforcement are traitors, place him solidly within the category of defendants who should be detained because there is an articulable threat posed by the defendant.

Citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), the D.C. Circuit explained, "The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, ... a court may disable the arrestee from executing that threat.'" *United States v. Munchel*, No. 21-3010, 2021 WL 1149196, at *7 (D.C. Cir. Mar. 26, 2021).   The Court explained that there must be an identified, articulable threat posed by the defendant to an individual or the community and stated that the threat need not be of physical violence, and may extend to "non-physical harms such as corrupting a union." *Id*. at 7 (citing *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988)).   Here, as recent as the defendant's arrest, the defendant was writing letters to the Garrett County Sheriff referring to historical events "currently in play" and referring to Washington, D.C. as a foreign land.   Thus the defendant continues to not recognize the federal government, and continues to believe that a historical movement is at play.

The defendant's failure to even address the defendant's statements in his letters to the Garrett County Sheriff is notable, as the defendant's statements in these letters are at the heart of Magistrate Judge Harvey's findings.   The letters show that the threat that the defendant will continue obstructing the government's lawful acts is still very much alive.   The defendant's willingness to engage in continued assaultive and obstructive conduct towards law enforcement officers, coupled with the lengths he is willing to go to combat perceived government misdeeds – whether it be certifying the Electoral College or ending a global pandemic, should give this Court great concern about the danger he would pose to the community, if released.   Magistrate Judge Harvey considered all of this evidence, and determined that there is no condition or combination of conditions of release that could reasonably assure the safety of the community, or that the defendant will appear in the District of Columbia, as required.   This Court should find similarly, and deny the defendant's motion for release.

## <u>CONCLUSION</u>

Defendant was not a protestor swept up in the swagger of a violent mob – he was a violent instigator. He is unmoored, with little to connect him to the community, and little regard for the authority of the federal government. It is clear that the defendant is both a danger to the community and a risk of flight. Considering all of the factors set forth above, there is no combination of conditions that will reasonably assure his appearance in the District of Columbia and/or the safety of the community. The defendant should therefore be detained pending trial.

WHEREFORE, the government respectfully submits that its Motion for Pretrial Detention should be granted.

Respectfully submitted,

Channing D. Phillips
Acting United States Attorney
D.C. Bar No. 415793

 */s/ Colleen D. Kukowski*
Colleen D. Kukowski
DC Bar No. 1012458
Colleen.Kukowski@usdoj.gov
Michael C. Liebman
D.C. Bar No. 479562
Michael.Liebman@usdoj.gov
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2646 (Kukowski)
(202) 252-7243 (Liebman)

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention was served on all counsel of record via the Court's electronic filing service.

 */s/ Colleen D. Kukowski*
COLLEEN D. KUKOWSKI
Assistant United States Attorney

Date: April 2, 2021

12