**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 21-CR-177 (CRC)** |
| | : | |
| | : | |
| **DANIEL D. EGTVEDT** | : | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION TO REVOKE ORDER OF DETENTION OF U.S. MAGISTRATE JUDGE**
**AND TO MODIFY BOND CONDITIONS**

Detention of criminal defendants awaiting trial should be the exception, not the rule. The government contends that because Mr. Egtvedt grew a beard, drove his deceased father's car, yelled at police officers inside the Capitol, and filed paperwork with local authorities regarding a personal family squabble,  that this qualifies him  for detention under the Bail Reform Act. Yet the government does not identify any articulable threat or danger posed by Mr. Egtvedt  by these actions because they cannot. *See* Gov't response at 11. The government has inaccurately represented what happened on January 6, 2021.

Additional evidence cited by the government

In support of their motion for detention, the government relies on this additional evidence: two photos-one of a police officer looking through a door and a selfie of Mr. Egtvedt wearing a particular t-shirt,  and a video on his cell phone showing him wearing a plaid shirt as additional evidence.  They claim that the cell phone "was located in his deceased father's vehicle at the time of the defendant's arrest, and searched …pursuant to a search warrant." Gov't response at 3.  They also cite additional body worn camera (hereinafter "BWC") footage which shows the aftermath of Mr. Egtvedt being pepper sprayed by police and his yelling at a particular

1

police officer. It does not appear that they include BWC of the female bicycle wearing a blue jacket who was the officer he first came in contact with inside the Hall of Columns.1

Additional facts for consideration

The paperwork that the government cites that "[is] at the heart of Magistrate Judge Harvey's findings," Gov't response at 11, is paperwork Mr. Egtvedt filed on February 13, 2021 immediately after his brother took his mother for her vaccine and is called a "Petition for Protection" for a vulnerable adult from abuse. Mr. Egtvedt filed this after receiving advice from the officers that responded earlier that day to his brother's phone call. The second letter, written two days later on President's Day while he was in custody, was written to Garrett County Sheriff Robert Corley to request a meeting. *See,* Exhibit 1, filed under seal. Also, when the FBI and State Police arrested Mr. Egtvedt on February 13, 2021, it was within 50 yards of his home and he saw at least 6 black vehicles waiting at his brother's house nearby when he drove by. He did not run, or speed away. When two vehicles blocked the road, he stopped his car and waited for them to act.2

Argument

"Detention cannot be based on a finding that the defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise the scope of detention would extend beyond the limits set by Congress." *United States v. Munchel,* 2021 U.S. App. LEXIS 8810, at *17 (D.C. Cir. March 26, 2021). Rather, "[t]he crux of the constitutional justification for preventative detention under the Bail Reform Act is that, '[w]hen

---

1 Discovery has been coming in by dribbles, as late as 5:45 p.m. Friday, April 9, 2021.
2 Even though officers and FBI agents on the scene had just been told by Rick Egtvedt that Mr. Dan Egtvedt was with his 85 year old mother in the car, at least five different officers jumped out of their vehicles screaming and pointing guns at Mr. Egtvedt and his mother.

the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, . . . a court may disable the arrestee from executing that threat.'" *Id.* at *13 (*quoting United States v. Salerno*, 481 U.S. 739, 751 (1987)). "Thus, a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Id*. at *11.

Mr. Egtvedt is not a man prone to violence and is not a danger to the community as is evidenced by the BWC footage, his behavior before, during and after his arrest, and the testimony of his brother at the detention hearing. As Mr. Egtvedt exercised his right to protest by yelling at officers, it's important to see that even though he is two feet away from the officer, he is violently shoved by that police officer who loses his temper. Mr. Egtvedt just walks away rather than engaging him. *See* Gov't response at 5; Exhibit 2, filed under seal. And although the government has not rescinded their position that Mr. Egtvedt assaulted officers, a review of the BWC inside the hall of columns shows that these officers are not acting defensively-protecting themselves from Mr. Egtvedt but rather they are pushing and pulling him offensively in a coordinated effort to push him down.

Unfortunately, when making his findings on the record, Magistrate Judge Harvey was not given any videos to look at before he made his decision to detain Mr. Egtvedt and if he had, he would have concluded that it was in fact Mr. Egtvedt who was assaulted, and that his behavior does not pose an identifiable threat. The finding that "the defendant has a very hard time controlling himself" may be true in the limited context of January 6th at limited times that day, but every other day he maintained complete control of himself. Magistrate Judge Harvey also did

not have the benefit of hearing from officers[3] at either scene on the day he was arrested- not from the officers that responded to the 911 call and not from the officers who arrested Mr. Egtvedt later that day on federal charges. All reports and evidence indicate that when Mr. Egtvedt was interviewed by police and was later taken into custody, he was cooperative and compliant. Earlier that day, when officers first responded and asked him questions, he calmly explained to them his reservations about the vaccine and the danger it posed to his mother.[4] After his arrest, he spent five days at the Garrett County Detention Center without incident before his transfer to the District.

The government argues that Mr. Egtvedt "forced entry" into the capitol but there is absolutely no evidence to support this. The BWC shows him behind a group of others, maybe 5 or 6 people deep ahead of him. He is curious, almost passive and his behavior is innocuous. The government previously described him wiping his eyes of pepper spray, not forcing entry. The government also states that defendant's "peaceful" conduct has not been articulated. The BWC clips show several instances of Mr. Egtvedt walking calmly through corridors, sitting on a ledge for a period of time, and peacefully protesting outside the capitol while holding an American flag.

Thus, Magistrate Judge Harvey's finding of detention is not consistent with *Munchel*. *Munchel* requires a finding of an articulated and identifiable threat. Here, there is none.[5] The

---

3 Garrett County Sherriff's Officers responded to the call.
4 The family squabble was between two brothers: one who thought his mother should get the vaccine and the defendant, who did not. Many Americans, including 40% of U.S. Marines, are afraid to get the vaccine for various reasons and it is not unusual. https://twitter.com/cnnpolitics/status/1380862134221946881?s=10.

5 Presumably the government believes the t-shirt worn by defendant in the privacy of his hotel room is some sort of threat. In fact, the Supreme Court held that slogans on t-shirts are an exercise of free speech, even if offensive, and in this case, there is nothing offensive or prospectively a threat. *See Cohen v. California*, 403 U.S. 15 (1971)(a display on a t-shirt of "fuck the draft" in the Los Angeles courthouse cannot be criminalized, especially since it was not targeted at any particular individual).

government has not articulated what they fear the defendant will do. And even if they had identified one, it would have to be presented to this court by "clear and convincing" evidence that an actual threat existed. *See Salerno*, 481 U.S. 739, 751 (1987). Just because he believes that his congressman have betrayed him (he's not alone in this) and that while incarcerated he considered himself a prisoner "in a foreign land" (which has not been explained) does not mean he is in any way a danger to his community. On the contrary, he is seen in one video complimenting officers and telling them they are heroes.

Critically, the government has not been consistent on which defendants they believe should be detained and which defendants should get bond. In several other cases before this Court where defendants activity on January 6th was much more violent, the government did not ask for detention. In *USA v. Robert Sanford*, 21 CR 86 (PLF), where the defendant is alleged to have hurled a fire extinguisher at officers and hit someone in the head, yet he was given a bond. In *USA v. Chad Jones,* 21 CR 213(RJL), the defendant was filmed using a flagpole to break down the door leading to the Speaker's lobby, yet the government did not ask for detention. In *USA v. Gossjankowski* , 21 CR 123 (PLF), the defendant was observed actively using a taser on a police officer, is charged with using a deadly weapon, and was given a bond.  And in *USA v. Leffingwell,* 21 CR 5 (ABJ), the defendant was seen pushing past a wall of officers and punching an officer repeatedly in an effort to break past the officers and he was released.

Conclusion

Mr. Egtvedt's behavior at the Capitol was an isolated incident and unlike any previous or subsequent behavior. The government has completely overreached and exaggerated the facts in an attempt to bolster their claim that detention is appropriate. Now, it appears the government is

detaining individuals based on what goes on in their private lives that involves no violence or threat of violence.  *Munchel* unequivocally requires that if no threat is identified and articulated, the defendant must be released.  And here there is no allegation that Mr. Egtvedt was or is planning any future violent act. He does not correspond with anyone, such as a fellow protestor, before or after January 6, 2021.   *Munchel* also requires that this Court consider the context of the case. Not only is the context of January 6, 2021, important to consider, but the 9 months preceding it  due to the pandemic has been one of isolation, loneliness and thus sadness for millions of Americans. One could say this was the perfect storm leading up to January 6, 2021.

The government has failed to articulate a specific threat to the community posed by Mr. Egtvedt. A combination of conditions would assure this Court of the safety of the community and his presence at trial and he should be released.

Respectfully submitted,

KIRA ANNE WEST


By:        /s/
           Kira Anne West
           DC Bar No. 993523
           712  H Street N.E., Unit  509
           Washington, D.C.  20002
           Phone:   202-236-2042
           kiraannewest@gmail.com
           Attorney for Mr. Daniel Egtvedt


**CERTIFICATE OF SERVICE**

I hereby certify on the 12th day of April, 2021, a copy of same was delivered to the parties of record, by email  pursuant to the Covid standing order and the  rules of the Clerk of Court.

_____/S/_____

Kira Anne West