# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 21-CR-177 |
| **Daniel Egtvedt** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND PHONE EVIDENCE

COMES NOW Kira Anne West, counsel for Mr. Daniel D. Egtvedt in the above captioned case, and moves for the suppression of certain oral and written statements and evidence in the above case and in support states the following:

**I.    Background**

On January 5th, 2021, Mr. Egtvedt traveled to Washington, D.C. to attend a rally on January 6th, 2021.  He eventually made his way to the Capitol, and suffered a concussion after being inside the Capitol due to being pushed into a column by police officers.  After this event, he made numerous statements on the grounds of the capitol which were recorded by various

people, including police officers wearing body worn cameras. After the event, he drove home. Later, on February 13, 2021, due to his activities on January 6th, Mr. Egtvedt was arrested on a criminal complaint in Western Maryland and taken into custody. The Defendant was improperly induced to make certain statements. Defendant made these statements in the absence of counsel and without being mirandized. He was later indicted with assaulting, resisting or impeding certain officers in violation of 18 U.S.C. §111(a)(1); Obstructing a Law Enforcement Officer During a Civil Disorder pursuant to 18 U.S.C. § 231(a)(3); Obstruction of an official proceeding and aiding and abetting in violation of to 18 U.S.C. §1512(c)(2) & (2);  Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority in violation of 18 U.S.C. §1752(a)(1), (a)(2) (a)(4); and Violent Entry and Disorderly Conduct on Capitol Grounds in violation of 18 U.S.C. §5104(e)(2)(D) and(e)(2)(F. There was no search of his home. However, law enforcement officers took his phone and later obtained a search warrant for it. *See* Exhibit 1, 21 SW 58, filed under seal.

As this Court heard the facts of his arrest and subsequent incarceration during the detention appeal hearing, only salient facts will be repeated here.[1] Mr. Egtvedt moves to suppress all statements made by him to police officers at his home and all written and oral statements while incarcerated. The basis for suppression is 1. Non-compliance with the requirements of warning of constitutional rights when Mr. Egtvedt was in custody and waiver thereof preceding custodial questioning, and 2. the presence of a coercive atmosphere created by police custody and interrogation which resulted in undermining the privilege against compelled self-incrimination. He also challenges the taking and subsequent search of his cellular

---

[1] Many subjects of this suppression motion will also later be addressed in a motion in limine under FRE 403 grounds.

phone (from his car) and the search warrant to search this phone as improperly granted by the Magistrate Judge.

**II.     Facts**

Mr. Egtvedt drove alone to Washington, D.C., on January 5th, 2021, to attend a speech given by then President Trump.  He spent the night in a hotel.  On January 6th, 2021, Mr. Egtvedt attended the speech at the Ellipse.  He was alone.  After the rally he noticed that the crowd was moving towards the Capitol and he followed, alone.  He arrived at or near the Capitol at approximately 2:37pm.  (Government's Motion for Pretrial Detention, page. 2).  He followed a large crowd up the stairs and onto a second level balcony.  Once there he took in the sights over the bannisters and then walked over to see what was happening near one of the doors.  He looked in through the already broken windows of that door to see what was going on inside.  There were officers standing inside the door.  At that point, Egtvedt's act of looking into the windows drew a violent reaction from the officers who threw a smoke bomb directly on to Mr. Egtvedt and then sprayed him in both eyes with some kind of chemical agent.  He fell down and was helped by others in the crowd who poured water into his irritated eyes.  He stood back up as to not get trampled by people crowding the area even though he was barely able to see.  As he stood up he rubbed his eyes on the back of a person's jacket holding on for stability.  Mr. Egtvedt, trying to rid his eyes of the irritant and stay on his feet so as not to get crushed, was carried in with the flow of people into the doors that had now been opened.  (*See* Parler – ProPublica 1447 hours – dM4L9bbfDmJ1_cvt).

Once inside  the doors, Mr. Egtvedt sat on a bench area in an alcove and tried to recover from his injuries.  (*See* DLive at 4 seconds).  He tells a person with a camera recording the DLive video that says it "hurt like hell" and that he had been sprayed in the eyes twice.  At one

point he is seen wiping his head and face off with a Trump flag to try and get some relief from the irritant on his body. (*See* DLive video at 1min18sec). Once able to walk, Mr. Egtvedt made his way down the hallway following a large crowd. His eyes were so irritated he barely knew where he was. He can be seen walking this hallway appearing disoriented and blinking repeatedly to try and see better. (*See* Parler – ProRepublica 1508 hours -dM4L9bbDmJ1_cvt). Mr. Egtvedt then walked towards the Hall of Columns. At 3:11pm a CCTV video shows Mr. Egtvedt walking down the Hall of Columns pointing to officers and telling them "God Bless all of you." (*See* 0177 USCH 01 Hall of Columns South Door 20201-01-06 at 16 secs). Egtvedt passes by the officers without incident and exits through the doors. Fifteen seconds later he is seen entering back in through the doors. (*See* 0177 USCH 01 Hall of Columns South Door 20201-01-06 at 41 seconds). At that point he proceeds into the building and is assaulted by a female bicycle officer wearing a blue jacket. *Id.* at 47 seconds. Several more officers swarm around Mr. Egtvedt and begin to place hands on him and grab him. They push him around, drag his coat off him and then throw him into a column. Mr. Egtvedt is pushed so hard into one of the columns that his head bounces off it like a basketball.[2] *Id.* at 57 secs. As a result, he suffered a severe concussion.[3]

    Mr. Egtvedt screams as he falls to the ground. His screams appear to stop for a little bit then start back up again, consistent with a loss of consciousness for some period of time as he lay on the cold marble floor. ( *See* Da Cruz BWC at 28:27). According to the government, Mr. Egtvedt was "removed" from the Capitol at approximately 3:14pm. (Government's Motion for Pretrial Detention, p. 10). The video shows this "removal" as Mr. Egtvedt being tossed not just

---

[2] Defendant incorporates the facts and arguments made in his appeal of detention motion previously filed.
[3] Medical records are forthcoming and will be filed under seal.

out of the door, but into it, head first, by two officers, then tossed onto the ground in the pathway of the door while others walk over him. While on the ground, his coat is flung on top of his lifeless body. ( *See* 0181 USCH 01 South Door Vestibule-2021-01-06_15hr10min00s000ms at 3min47sec). Eventually Mr. Egtvedt is escorted towards the East side of the Capitol. Video footage later in the day shows Mr. Egtvedt saying the pledge of allegiance holding a up an American flag on the exterior grounds of the Capitol and speaking to police along with other protestors. *See* Maslona_Clip-1_1_20210106-Riot_US-Capitol at 2min22sec.[4]

On February 13, 2021, Mr. Egtvedt was in an argument with his brother about whether or not their elderly mother should receive the Covid 19 vaccine. His brother called the police, and the two brothers were separated. Mr. Egtvedt was told by an officer to stay in one place and to stay on the couch. He was not told he was free to leave. While multiple officers were talking to Mr. Egtvedt, his brother left with their mother. Later that day, as local officers learned that Mr. Egtvedt was wanted for his participation in January 6, the FBI was notified and a plan was made to return to the home to arrest Mr. Egtvedt. However, when the FBI arrived, he was not at home. They waited. When they saw his car, they blocked the street so that he could not pass. He was removed from his car. His phone was left in the car. He did not give consent to search his car, and from the police reports given to defense counsel in discovery, it does not appear that any officer asked for consent. He was taken to the county jail and later transferred to D.C. where he remained in custody until this Court granted him bond. Mr. Egtvedt made statements at his home, at the jail, and to police officers transferring him to D.C. He also wrote two letters from the County jail while incarcerated. Mr. Egtvedt was not adequately advised of his constitutional

---

[4] Undersigned counsel intends to confer with government counsel and jointly submit exhibits to this motion to the Court.

right to remain silent and right to the presence of an attorney at any time, and did not knowingly, voluntarily or intelligently waive his constitutional right to remain silent pertaining to any of these statements.

On March 1, 2021, a search warrant for Mr. Egtvedt's phone was issued by Magistrate Judge Zia Faruqui. The warrant lacks probable cause and defendant respectfully asks the Court to suppress the search and the issuance of the warrant. *See* Exhibit 1.

### III. Law: Statements

The Supreme Court has determined that the Fifth and Fourteenth Amendment's prohibition against compelled self-incrimination requires that custodial interrogation be preceded by advice to the Defendant that he has the right to remain silent and the right to the presence of an attorney. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Miranda warnings are required before custodial interrogation begins. *Id*. at 444-45.  Before it can use any statements produced through custodial interrogation, the government has the burden to show that. "the defendant 'voluntarily, knowingly and intelligently' waived [these] rights." *J.D.B. v. North Carolina*, 564 U.S. 261, 269-70 (2011). A custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody *or otherwise deprived of his freedom of action in any significant way. Illinois v. Perkins*, 496 U.S. 292, 296 (1990)(emphasis added). To determine whether or not a person is in custody, one must examine the objective circumstances of interrogation, not the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323, (1994). The Court must look to how a reasonable man in the suspect's position would have understood the situation. *Id., quoting Berkemer v. McCarty,* 468 U.S. 420, 442 (1984). Moreover, the Government must show

the statements were obtained without coercion or improper inducement. *Colorado v. Connolly*, 479 U.S. 157 (1986).

Should a defendant make a statement, a court must examine the voluntariness of the particular statement and test whether the statement was freely given under the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see also, Malloy v. Hogan*, 378 U.S. 1, 6- 7 (1964) (the constitutional inquiry is not whether the conduct of the law enforcement officers in obtaining the confession was shocking, but whether the confession was free and voluntary); *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). The government bears the burden of proving by a preponderance of the evidence that a statement allegedly made by a defendant was voluntary, or fits into exceptions to this general rule. *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *United States v. Garcia*, 780 F. Supp. 166, 171 (S.D.N.Y. 1991). However, Miranda does not apply "[i]f the defendant is not in custody … nor do[es][it] govern other non-interrogative types of interactions between the defendant and the State." *Montejo v. Louisiana*, 556 U.S. 778 (2009). Without a valid Miranda waiver, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions. *Pennsylvania v. Muniz,* 496 U.S. 582, 601-02 & n. 14. Accordingly, the questioning here by law enforcement officers did serve to elicit incriminatory admissions.     The government bears the burden to demonstrate a knowing and intelligent waiver of the privilege against self-incrimination when a defendant raises a colorable claim of coercion. *See Miranda* 384 U.S. at 475; 18 U.S.C. § 3501(b) (setting forth criteria for determining when a confession is "voluntary" or "coerced.") And when determining voluntariness of a statement, the "totality of the circumstances" must be examined, including the defendants individual characteristics and background, the setting in which the statement occurred, and the details of the interrogation or interview. *United States v. Elie*, 111 F.

3d 1135, 1143-44, (4th Cir. 1997); *United States v. Pelton*, 835 F.2d 1067, 1071-72 (4th Cir. 1987). *Accord United States v. Van Metre*, 150 F 3d 339, 348-49 (4th Cir. 1998).

**Argument**

Any person in Defendant's position, surrounded by multiple police officers wearing guns and ordered to be separated from others in the home, would have understood himself to be in custody and not free to leave at that time. Defendant anticipates that the Government will not be able to establish that his custodial interrogation was preceded by advice that he had the right to remain silent and the right to the presence of an attorney. Also, if there was a waiver, which there is not evidence of one, the government cannot meet its burden of showing that defendant's waiver was knowing and voluntary under the totality of the circumstances. Officers began questioning the defendant immediately after his "arrest". He was extremely upset about a personal matter separate and apart from his arrest which only exacerbated the situation. When he was arrested, he also was shown a video by a police officer and defendant responded. This statement came after his arrest, was in response to police interrogation and defendant was not mirandized. Moreover, we now know based on later medical diagnoses that Mr. Egtvedt was suffering from a severe concussion caused by numerous police officers at the Capitol on January 6. Undersigned counsel will develop these facts and additional facts at a hearing without giving the government a preview of its case. The government will not be able to establish by a preponderance of the evidence that the statements were voluntarily given under the totality of the circumstances.

**Law: 4th Amendment search**

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has applied a "familiar threshold standard of probable cause for

Fourth Amendment seizures," a standard that "reflects the benefit of extensive experience accommodating the factors relevant to the 'reasonableness' requirement of the Fourth Amendment, and provides the relative simplicity and clarity necessary to the implementation of a workable rule." *Michigan v. Summers*, 452 U.S. 692, 697 (1981). In *Arizona v. Gant*, 556 U.S. 332 (2009), the Court concluded that a search incident to arrest is allowed "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id*. To justify a search to seize any cell phone, police needed reason to think not only the person possessed a phone, but also that the device would be located in the home and would contain incriminating evidence about the suspected offense. *United States v. Griffith*, 867 F.3d 1265, 1273 (D.C. Cir. 2017). Cell phones such as the one at issue here, an iPhone 7, deserve the strictest of protections under the 4th amendment. The warrant here is overbroad, lacks particularity and does not state sufficient probable cause. Supreme Court precedent demands that this Court determine if within the warrant "there is fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Thus, the affidavit "must demonstrate cause to believe" not only that an item of evidence "is likely to be found at the place to be searched," but also that there is "a nexus between the item to be seized and the criminal behavior" under investigation. *Griffith* at 1271.

      The particularity requirement-that a warrant "set out with particularity" the "scope of the authorized search," Kentucky v. King, 563 U.S.452, 459 (2011) "is closely tied to the requirement of probable cause. *Griffith* at 1275, quoting 2 Wayne R. LaFave, Search & Seizure 3.7(a)(5th ed. 2016). Generally, fruit of the poisonous tree is subject to the exclusionary rule. *See generally United States v. Hood,* 435 F. Supp. 3d 1, 6 (D.D.C. 2020) ("When the government conducts an unconstitutional search or seizure, the Court must exclude any evidence obtained as

the 'fruit' of that search or seizure.") (*quoting United States v. Smith*, 373 F. Supp. 3d 223, 236 (D.D.C. 2019)). The exclusionary rule applies when an objectively reasonable officer could not think the affidavit established probable cause. *United States v. Griffith*, at 1278 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).

**Argument**

On February 13, 2021, Mr. Egtvedt was stopped, arrested and taken from the scene. His phone was left in his car and later taken by police.[5] There was not probable cause to search the car. There was no warrant to search the car, only an arrest warrant for him. He was not "armed and dangerous" such that officers would want to search his car. A pat down of his person presumably (it's not addressed in agent reports) provided nothing. Given the lack of support for the search of the car, all the evidence from that stop must be suppressed-and since that evidence was, in turn, the foundation for the warrant for the phone, this evidence must be suppressed as fruits of the poisonous tree. There is a dispute as to whether the phone was left in defendant's car or the officer's put the phone in defendant's pocket. It makes no sense that the officer would hand the defendant his phone while he was being arrested. After *Riley v. California*, 134 S. Ct. 2473 (2014), phones in vehicles are not treated like containers and subject to search after a valid arrest. *See United States v. Camou*, 773 F.3d 932, 941-43 (9th Cir. 2014). Regardless, the government obtained a warrant. However, the warrant was facially invalid.

The affidavit to the warrant for the search of his phone does not establish probable cause to believe that Mr. Egtvedt used his phone to commit any of the offenses he's charged with and, further, even if it did, it does not establish that the evidence would be found on his phone. First,

---

[5] The defendant disagrees with the government's assertion that Mr. Egtvedt asked that the phone be put in his pocket. See Warrant, paragraph 77.

there is no evidence in the affidavit that Mr. Egtvedt even had his phone in the proximity of the cordoned off area of the capitol or that he used his phone to take pictures that day.  There is only one statement by the affiant that he saw a picture of Mr. Egtvedt with a phone on January 6th and that was around the "exterior of the United States Capitol building.  *See* paragraph 60, Exhibit 1, Affidavit in Support of Search Warrant (hereinafter "the affidavit").  Oddly, with all the footage from inside the Capitol that day, the affiant does not include a picture of this in the affidavit.  There is no evidence in the affidavit that Mr. Egtvedt was communicating with anyone via his phone that day and no evidence he ever used his phone inside the Capitol or outside on the grounds, but for the unsupported statement of the affiant with no picture or reference to which video or the source of that video on which he sees Mr. Egtvedt with the phone.

      Second, and most important, there is no nexus provided between Mr. Egtvedt's activities that day and to his phone.  Even if the Court finds that a search incident to arrest was valid, there is still no probable cause for the warrant for the phone.  The majority of the warrant affidavit is spent examining what others did that day with their phones, not Mr. Egtvedt.  And the affiant never gives a reason as to how he knows that everyone that attends big events carries a phone to document it.  He's never worked a big event as a police officer previous to January 6, 2021, and if he had, one one think he would have included it in the warrant.  Instead, he just says "[t]he facts in this affidavit come from my personal observations, my training and experience, my review of documents and other material, and information obtained from other agents, task force officers and witnesses."  *See* Exhibit 1, paragraph 3. The Magistrate Judge approving this warrant is not even told what law enforcement experience this FBI agent has which is troubling.  The affiant never states in the warrant even the reasonable suspicion that Mr. Egtvedt used his phone at the Capitol, just that "the device first appears in or near the U.S. Capitol at 2:37 p.m."

*See* Exhibit 1, paragraph 69. The affiant states further that "numerous persons committing the target offenses possessed digital devises that they used to record and post photos and videos of themselves and others committing those offenses." *Id.* at paragraph 71. The affiant engages here in a common fallacy- that being a *fallacy of composition*: assuming that a part (Mr. Egtvedt) of the whole (the protesters) has all the properties of the whole itself. That is, the government's mistake is thinking that, because Mr. Egtvedt is a part of a larger crowd (in which other members of the crowd were indeed violent) that he also shares in the same properties as everyone else in the crowd (being violent), but he does not. The first fallacy leads nicely to the government's second fallacy of reason: *petitio principii* or begging the question. This second fallacy is a fault in reasoning where one assumes the conclusion he is trying to prove. In this case, the government is assuming their conclusion without producing a valid argument with true premises that leads to that conclusion. Rather, the government is associating Mr. Egtvedt with other members of a larger whole and thus foregoing any kind of argument that is specific to Mr. Egtvedt, which the 4th amendment requires for a search warrant. He says nothing about Mr. Egtvedt's use of his phone then or at any other time, despite the fact that he states "Egtvedt was captured on several cameras inside the United States Capitol Building…." *Id.* at paragraph 47. Finally, the affiant states he needs the information to show "evidence as to when he traveled, the route used, and the device's geolocation dates would be evidence of his presence at the U.S. Capitol and Grounds." *Id.* at paragraph 73. The problem here is twofold, 1. the affiant fills the warrant with photographs and descriptions of Mr. Egtvedt in the capitol on the pages preceding this statement and none contain him with a phone and 2. The affiant states that he has information from a DEA license plate reader and phone records of where exactly Mr. Egtvedt was on January 6th. So even if the Court found there was some indicia of probable cause in the warrant, it would clearly be

overly broad because they already had the information they sought. In other words, if undersigned counsel was walking with her phone on January 6th to the federal courthouse-a building close to the Capitol, and her phone records showed she was in the area, under the government's theory, she would have been using her phone in furtherance of some crime because so many others that day used their phones to capture what was happening at the Capitol. Or, perhaps she saw what was happening at the Capitol, filmed it with her phone, and therefore she committed a crime.  This is what the government is saying in the affidavit.

On the face of this warrant, there's no probable cause that his phone will contain evidence of these crimes. They've alleged other's used their phones, but that doesn't mean the defendant used his phone on January 6th *to commit the crimes he's charged with*. There's no evidence in the warrant that he used his phone to post on social media, communicate with others, no cctv or body worn camera mentioned in the warrant that he used his phone on January 6th in and around the Capitol,  and on March 16, 2021, when they applied for this warrant, they had all of this photographic evidence. In fact, the warrant only provides photographs of other rioters using phones, not Mr. Egtvedt.  For example, the photographs in the warrant below paragraph 36 show one man using his phone, and another man carrying the confederate flag-no phone in that photo.[6]

*United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017) is instructive here. In *Griffith*, the Circuit held that an overly broad warrant is invalid. Here, the affiant gives no dates certain in which to search the phone for evidence of the alleged crimes. *See* Exhibit 1, Attachment B. Thus, the agent could look years before January 6, 2021 and more than a year after January 6, 2021 for

---

[6] The government's argument is, that if others carry a conferate flag in the capitol, Mr. Egtvedt must be a white supremacist as well.

evidence. This is commonly known as a "phone dump" and the government here was able to take a complete copy of everything on his phone without any restriction from the warrant as to time or events.

The *Leon* exception would not apply even if the warrant lacks probable cause because the affidavit is "so lacking in the indicia of probable cause as to render official belief in its existence entirely unreasonable. *See United States v. Leon,* 468 U.S. 897, 923 (1984); *Griffith*, 867 F.3d at 1279.

WHEREFORE, Defendant prays this Honorable Court will set this motion down for pretrial evidentiary hearing and thereafter order suppression of evidence and statements.

Respectfully submitted,

KIRA ANNE WEST

By:   _____/s/\_\_\_
Kira Anne West
DC Bar No. 993523
712 H Street N.E., Unit 509
Washington, D.C. 20002
Phone: 202-236-2042
kiraannewest@gmail.com

CERTIFICATE OF SERVICE

I hereby certify on the 2 day of March, 2022 a copy of same was delivered to the parties of record, by email pursuant to the Covid standing order and the rules of the Clerk of Court.

                                     /S/
                              Kira Anne West