**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE NO. 1:21-cr-00177 (CRC)** |
| | : | |
| **DANIEL DEAN EGTVEDT** | : | |
| | : | |
| **Defendant.** | : | |

## MOTION IN LIMINE TO PRECLUDE CLAIM OF SELF DEFENSE

The United States of America respectfully moves in limine to preclude the defendant from raising a claim of self-defense. The available facts, as a matter of law, do not support a claim of self-defense because they show that (1) the defendant was the initial aggressor, and (2) the defendant violently assaulted a law-enforcement officer who attempted to conduct a legal stop within the course of the officer's official duties. In the alternative, the government requests that the defendant provide a pre-trial proffer of facts to allow the parties to argue, and the Court to decide, whether the defendant is entitled as a matter of law to assert self-defense.

## INTRODUCTION

In Counts One and Two of the indictment, defendant Egtvedt is charged with assaulting, resisting, or impeding a federal officer, specifically Officer M.M. and Officer M.D., in violation of 18 U.S.C. § 111(a)(1).

To meet its burden of proof at trial, the government will seek to admit video evidence showing the defendant refusing to leave the Capitol building after he illegally forced his way into it. In the course of refusing to leave the building, defendant Egtvedt assaulted, resisted, and impeded Officers M.M. and M.D.

First, the evidence will show that the defendant assaulted Officer M.M. without provocation when she attempted to prevent him from walking down the Hall of Columns toward the building's interior. After Egtvedt forced his way into the U.S. Capitol at approximately 2:49 p.m., he eventually made his way to the Crypt, and then to the Hall of Columns. When Egtvedt arrived in the Hall of Columns, at about 3:11 p.m., numerous law enforcement members, all in uniform, were standing along either side. As Egtvedt walked down the middle of the hall, heading in the general direction of an exit doorway, he pointed to several of them and stated, "God bless all of you." One officer responded, "Keep going, sir."

As Egtvedt neared the end of the hall, about 20 feet from the exit, another law enforcement member, an FBI agent dressed in tactical gear, motioned for him to continue in that direction. Egtvedt walked a few more feet toward the doorway. However, he then abruptly turned around and began walking back down the Hall of Columns toward the building's interior. As Egtvedt passed by the same agent, that agent once again motioned for him to proceed to the doorway. Egtvedt ignored the agent and continued walking away from the doorway.

*Exhibit 1*



As Egtvedt, who is listed in driver's license records from 2020 as 6'2" tall and weighing 320 pounds, continued toward the interior of the building, U.S. Capitol Police (USCP) Officer M.M.--a woman about half his size who was in full uniform--stepped in front of him to block his path.

*Exhibit 2*



When Egtvedt continued walking toward her, Officer M.M. placed her right hand on his upper left shoulder, to direct him back toward the doorway. When Egtvedt did not comply, two more uniformed USCP officers positioned themselves around Egtvedt.

*Exhibit 3*



Egtvedt continued to walk away from the doorway and loudly stated, "You shoot me! Shoot me! You guys are violating the Constitution of the United States of America!" He then swung his left hand around and swatted Officer M.M.'s right hand off his shoulder. Officer M.M. then raised her left hand and placed it on Egtvedt's upper chest area. Egtvedt then rotated his body and pinned the officer's left hand in the crook of his right elbow. Officer M.M. swung her right hand against Egtvedt's right arm in order to free her other hand. Egtvedt's assaultive actions – swinging his hands at and striking Officer M.M., then pinning her hand into the crook of his elbow – were the product of his initial aggression.

Second, the evidence will show that after the defendant refused to comply with Officer M.M.'s directives to leave the building, Officers M.M. and Officer M.D. attempted to physically remove the defendant from the building. In response, Egtvedt assaulted both officers – by falling on Officer M.D., and continuing to swing his arms at Officer M.M. The evidence will show that when the defendant was swinging his arms at Officer M.M. and pinning her hand in his elbow, the

two other USCP officers were also attempting to subdue Egtvedt. In addition, D.C. Metropolitan Police Department (MPD) Officer M.D., also in full uniform, positioned himself behind Egtvedt and pulled him by his jacket back toward the doorway.

*Exhibit 4*



Egtvedt then began to yell, "You work for us! You work for us!" He then twisted around, removing first his left arm and then his right from his jacket, which fell to the floor. He continued in his effort to move forward, away from the doorway.

*Exhibit 5*



Two more officers, again in full uniform, surrounded and pushed against Egtvedt, as he continued struggling, still trying to move forward. With the weight of four male officers against him, including Officer M.D., Egtvedt could no longer move forward and fell backwards to the floor. As he hit the floor, the back of his head struck one of the columns. He also landed partly on top of Officer M.D.

For the next two minutes or so, Egtvedt lay on the floor. Although conscious and alert he refused to comply with officers' demands and stated he would not leave. The officers also asked him whether he wanted medical assistance, which he declined. Finally, two male USCP officers lifted Egtvedt to his feet and half-carried, half pushed him toward and out the doorway. Egtvedt fell to the floor again, immediately outside the doorway. Officers again tried to convince him to stand up and leave. He would not. The officers again offered to get him medical assistance. He again declined.

After about two more minutes the officers helped Egtvedt to his feet. Now standing

immediately outside the doorway Egtvedt promptly attempted to re-enter the building. Once again uniformed officers, including Officer M.M., physically blocked him, and once again Egtvedt swatted at Officer M.M.'s hand as she pushed against his chest. After a few more moments of confrontation, Egtvedt relented and, at 3:18 p.m., began walking away from the doorway. At this point Egtvedt was on a raised outdoor terrace with several sets of steps leading down to a concrete area on the south side of the building. As he walked toward the steps on the western end of the terrace, an MPD officer called up to him and told him he needed to go the opposite direction, toward the steps on the eastern end. Egtvedt ignored the officer and continued toward and then walked down the steps on the western end.

As he neared the bottom of those steps, the same officer approached him and once again told him he needed to head the opposite direction. He responded, "I don't want to go over there." The officer, a female, repeated her command. He refused and came to the bottom of the steps. The officer, joined by a male MPD officer, then physically turned Egtvedt around and began to push against Egtvedt's back, forcing him to walk toward the east. As he walked, he leaned back against them to resist, and shouted, "This is tyranny!"

When the officers reached an area just outside the southeast corner of the building, other officers opened up a set of metal barriers and Egtvedt was directed to the other side of them. Thereafter, Egtvedt remained on the grounds of the Capitol for several more hours, outside the barriers, attempting at various points to engage verbally with law enforcement members.

## ARGUMENT

Section 111 makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with" a federal officer in the performance of the officer's duties. 18 U.S.C. § 111(a)(1). A defendant charged under Section 111 may assert, as an affirmative defense, a theory of self-defense, "which justifies the use of a reasonable amount of force against an

adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger." *United States v. Middleton,* 690 F.2d 820, 826 (11th Cir. 1982).

"A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (internal quotation marks and citation omitted). That principle applies fully to Section 111 prosecutions. *See, e.g.*, *United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could not, as a matter of law, have been acting in self-defense"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012) ("[A]n individual who is the attacker cannot make out a claim of self-defense as a justification for an assault.").

The proffered video evidence demonstrates that the defendant was the initial aggressor in this case. At no point before the assault did Officer M.M. apply force to the defendant. Indeed, the video evidence shows that Officer M.M. made only incidental and non-forceable contact with the defendant, placing her right hand on his upper left shoulder, to direct him back toward the doorway. She did so only after the defendant ignored obvious physical and verbal directives to leave the building. It was the defendant who then initiated a physical attack by swatting her arm away, pinning her hand in the crook of his elbow, and continuing to try and charge down the Hall of Columns, back into the interior of the building. He therefore cannot, as a matter of law, seek acquittal on the Section 111 charge by asserting self-defense.

Other circumstances depicted in the video do not bear on the elements of self-defense. Egtvedt may have objected to law enforcement's presence at the U.S. Capitol, their effort to detain other individuals at the scene, or their directives that he move from his position and leave the area. None of that matters. *See United States v. Urena*, 659 F.3d 903, 907 (9th Cir. 2011) (observing

that "harsh words from another, insulting words, demeaning words, or even fighting words" does not provide license to "stab the offending speaker in the neck, bash their skull with a baseball bat, send a bullet to their heart, or otherwise deploy deadly force in response to the insult"). Because the defendant "was the attacker" in this case, *ibid*., he cannot advance a self-defense theory.

Even if the defendant was not the initial aggressor, he would still be precluded from asserting a self-defense claim because he used force for the purpose of resisting arrest or other performance of duty by Officers M.M. and M.D., who were acting within the scope of their official duties. In a case where a defendant is charged with violating 18 U.S. C. § 111, a self-defense claim has two important limitations. First, Congress enacted Section 111 "to protect both federal officers and federal functions." *United States v. Feola*, 420 U.S. 671, 679 (1975). As a result, "[a]n individual is not justified in using force for the purpose of resisting arrest or other performance of duty by a law enforcement officer within the scope of his official duties." *United States v. Drapeau*, 644 F.3d 646, 653 (8th Cir. 2011); *see also United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996) ("[Self-defense] principles must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties."). Second, even in circumstances where an individual might be justified in using some force to resist a federal officer, that resistance must be reasonable under the circumstances. *See Abrams v. United States*, 237 F.2d 42, 43 (D.C. Cir. 1956) (observing that "the use of 'reasonable force' only would have been open to defendants"); *see also United States v. Wallace*, 368 F.2d 537, 538 (4th Cir. 1966) (explaining that Section 111 permits "reasonable force employed in a justifiable belief that it is exerted in self-defense"); *United States v. Perkins*, 488 F.2d 652, 655 (1st Cir. 1973) (defendant may be convicted under Section 111 where "he used more force than was necessary to protect the person or property of himself or others").

Both limitations apply here. The proffered video evidence shows that the defendant had illegally entered a restricted area of the U.S. Capitol. Indeed, the defendant was in the building for approximately twenty minutes before he made his way to the Hall of Columns. He was therefore subject to arrest. The video further shows that Officer M.M. reasonably attempted to stop the defendant from progressing back into the interior of the building by providing both verbal and physical directives to leave the building. Officer M.M. pointed to the door, and then placed a hand on the defendant's shoulder when he refused to heed her directives and stop progressing into the interior of the building. At no point did Officer M.M. use excessive force. *Cf. Drapeau*, 644 F.3d 646, 653-654 ("[A]n individual may be justified in using force to resist excessive force used by a law enforcement officer."). When Officer M.M. and two other USCP officers were physically unable to stop the defendant from progressing further into the Hall of Columns, Officer M.D. and others had to join Officer M.M. and the USCP officers in attempting to physically stop the defendant from making additional progress into the building. The officers did not brandish or use weapons in their attempts to stop the defendant. Because the video evidence displays a lawful effort by the officers to prevent the defendant from reentering the Capitol, the defendant was not justified in using any force to resist the arrest. He cannot therefore argue self-defense.

Moreover, even if the defendant had the right to resist Officer M.M. in some fashion, the proffered video evidence shows that the defendant escalated the encounter into a violent attack on Officer M.M. *See Waters v. Lockett,* 896 F.3d 559, 570 (D.C. Cir. 2018) (self-defense not applicable "if [the defendant] and his co-conspirators used excessive force to repel Hargrove's attack"). In particular, the defendant repeatedly swung his arms at Officer M.M. and struck her. This quantum of force was unreasonable and, accordingly, disqualifies the defendant from claiming self-defense.

## CONCLUSION

For these reasons, the United States respectfully moves the Court to preclude the defendant from raising a claim of self-defense or, in the alternative, require the defendant to make a pre-trial proffer of facts that would permit the Court to decide whether he is entitled as a matter of law to assert self-defense.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Colleen D. Kukowski*
Colleen D. Kukowski
Assistant United States Attorney
D.C. Bar No. 1012458
Colleen.Kukowski@usdoj.gov
601 D Street Northwest
Washington, D.C. 20530
(202) 252-2646

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion in Limine to Preclude Claim of Self Defense was served on all counsel of record via the Court's electronic filing service.

*/s/ Colleen D. Kukowski*
COLLEEN D. KUKOWSKI
Assistant United States Attorney

Date: April 25, 2022