UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIMINAL ACTION NO.** |
| | ) | |
| | ) | **1:21-CR-00177 (CRC)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL DEAN EGTVEDT,** | ) | |
| | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

### REPLY TO GOVERNMENT'S OPPOSITION THE DEFENDANT'S MOTION TO COMPEL ACCESS TO NON-PUBLIC AREAS OF THE CAPITOL

Defendant, by undersigned counsel, requests that the government be compelled to allow his defense counsel access to material non-public areas of the Capitol building in order to inspect, photograph and videotape these areas for preparation in his defense. As stated in the original Motion to Compel, these areas are not available to the public for these purposes and have not been made available to counsel for photographs, measurement and recording on the prior tours of the Capitol designed for defense counsel.

1

The Government has filed an Opposition to the Motion to Compel. *See* ECF No. 87. In this opposition the government asserts that the Defendant has not shown how photographs, accurate measurements of distances portrayed on CCV video and videotaping of the spaces where defendant is seen on those videos are material to his preparation for his trial and his defense. Mr. Egtvedt disagrees. Critical to his defense is an accurate understanding of where officers were positioned when he was attacked with OC spray (a distance one can only gauge accurately through measurements) but also where officers were positioned in the Hall of Columns when he traversed that path and what Mr. Egtvedt could see when he traversed that path and at what distance.

The first material need for measuring, photographing and video recording at the Capitol concerns the deployment of OC spray into Mr. Egtvedt's eyes while he looked into the windows of the Senate Wing Doors. The CCV footage given to the defendant in discovery clearly shows an officer using the chemical irritant at a range "very close"[1] to the defendant's eyes. Oddly, the government has been unable to identify who this officer was who attacked Mr. Egtvedt while he calmly looked into the window and snapped two cell phone photos of the officers inside. The government seems to have no idea who this officer is to this day, despite repeated requests by the defense for his identity, despite possessing an up-close photograph

---

[1] The material issue is determining exactly how close within a reliable degree. The CCV video gives no indication.

taken by Mr. Egtvedt of the officer's face, despite knowing who was standing directly behind him that day, and despite having extensive CCV video of the events that day where this officer was deployed to secure the Senate Wing doors. Indeed, this officer is seen on CCV video talking to other officers, directing barricade placements and deploying baton strikes and OC spray repeatedly on protestors.

This officers demeanor when compared to other officers at the very same doors at the same time stands out like a sore thumb. At one window that flanks the Senate Wing doors, people are calmly being helped to exit out the window by officers. *See* Figure 1, area 1. At the other window, officers are seen calmly engaging in verbal exchanges with protestors or just standing silent in a non-combative pose. *See id.*, area 3. But in the middle, directly at the doors, one officer has barricaded himself right up to the doors. *See id.*, area 2. This is the unidentified officer who sprays Mr. Egtvedt. He is seen whacking his baton repeatedly at protestors and deploying his OC spray as **everyone else** just stands around watching. (emphasis added).

Figure 1



A rough estimate of the officers in this area, just from the above photograph, is about 18-20. Yet, the only one whacking at protestors here is the one the government can't identify.

The next photo embedded below as Figure 2 shows the actual OC attack on Mr. Egtvedt. The officer's hand is outstretched and the defendant's face has just moved back in reaction to the spray. Is this a 6 inch distance depicted here? Is this a 12 inch distance? Who knows. The defendant needs access to measure the distances here so that testimony at trial can accurately describe the effects OC spray had on his ability to see inside the Capitol, the pain he experienced, and the duration the blindness and pain lasted. Expert and other testimony will be presented at trial showing that, with a more direct spray to the eyes, comes increased side effects and a longer duration.

Figure 2



The officer labeled with a blue arrow in Figure 2 is one that the government identified, after defense request, as Officer Amendola. The identification allowed the discovery of this officer's Use of Force report from that day. He reported that he "deployed and sprayed issued OC/ Sabre Red Spray in short bursts in varying distances **exceeding approx. 4ft**. to prevent and disrupt protestors/rioters from gaining and forcing entry into the Capitol Building." (emphasis added), *See* Exhibit A, Jan 6, 2021, USCP Use of Force Report by Amendola.

Due to the distance and placement of the CCV video camera, there is no way to gauge the proximity of the defendant to the spray attack he suffered with certainty. However, if Officer Amendola says he was at least 4 feet away, that information can be verified by measuring his distance against what is seen in the CCV footage. This can then be compared to the actions of the unidentified officer as well. As previously

5

stated, this officer has not yet been identified, but the government represents that they are still actively trying to identify him. If he is identified prior to trial, his Use of Force report he filed for January 6, 2021, or lack thereof, will be a material evidentiary point in this case. In Figure 2, which has been enlarged from the original video clip, the defendant's face has already recoiled from the attack and is barely visible behind the door. Defendant wishes to measure the door thickness and placement of the officer's hand and arm in relation to that door as depicted here. These measurements are material to establishing the range at which the defendant was attacked and the relative compliance with USCP protocol and training in deploying the OC spray at that distance. Additionally, this information is material for impeachment and cross examination of Officer Amendola about his use of OC Spray that day, his ability to see Mr. Egtvedt from the position and angle he was standing at and his recollection, if any, of the unidentified officer's actions in spraying Mr. Egtvedt. Defendant requests that ability to photograph the placement of Officer Amendola at that window and his relative distance to Mr. Egtvedt.

The second material need to photograph and measure relates to Mr. Egtvedt's encounters with officers in the Hall of Columns. Mr. Egtvedt is accused of having "ignored" a government agent's gestures to exit the building that day. *See* Gov't. Opp. Page 5. As the government states, "…an FBI agent dressed in tactical gear, **motioned for him** to continue in that direction" and later "that agent once again

**motioned for him** to proceed to the doorway." *Id.* (emphasis added).   In both instances, Defendant is accused of having ignored visual cues to exit a particular pathway.  Material to defendant's defense is that his eyesight was impaired from the OC Spray such that he could not see or comprehend his surroundings.  The approximate time of his OC spray attack to his exit from the capitol was 36 minutes.  Because of the spray to his eyes, it is material to his defense to demonstrate the effect his significant visual impairment had on his ability to navigate and see officers while in the Hall of Columns.   This will be material to demonstrating that the visual gestures of the agent were not ignored, but simply not seen.

Additionally, the government states that "USCP Officer M.M--a woman about half his size who was in full uniform—stepped in front of him to block his path" but that he continued walking toward her.  The distance between this action and Mr. Egtvedt can been seen on CCV but not accurately assessed.  The angle of the video does not lend itself to measurements of any relative space.  Additionally, for portions of the relevant video, Mr. Egtvedt is off camera or partially off camera.  For example, when he is on the floor after being thrown head first in to the column only his feet are visible.  *See* Figure 3.

Figure 3



What Mr. Egtvedt could see and at what distance he could see it can only be accurately assessed with measurements and photographs of the Hall of Columns and the placement the officers at the time. The CCV video not only leaves out important action but it also skews the scene. The above photo demonstrates the distortion based on camera placement and how the perspective of the camera makes it difficult, if not impossible, to determine length and width of the space and distances between officers.

While it is true that an overwhelming amount of discovery has been produced in the January 6 cases, it is also true that the majority of it has nothing to do with Mr. Egtvedt. He didn't go into the Capitol Rotunda, the Capitol Visitor Center, the

House Chambers, Statuary Hall or Nancy Pelosi's office. The Government points out that they have turned over "nine terabytes of information that would take 102 days to view" including maps of cameras all around the Capitol interior and Capitol Visitor's Center. But what they fail to point out is that most of that is unrelated to Mr. Egtvedt's case. It is just another indication of how the government has sought to impede the actual search for truth in any of these cases by limiting the time and access to the alleged crime scene and burying defendants in unrelated and mostly useless discovery. They do this all while failing to conduct an adequate investigation to identify their own government officer who assaulted Mr. Egtvedt that day and who is material to Mr. Egtvedt's defense.

The government has not opposed the defendant's request to see the places he was alleged to be present in the Capitol on January 6th. Gov't. Opp.at p.1. This however, has not been a consistent position taken by the government in these January 6 cases. Undersigned defense counsel have requested access in other cases to spaces not previously made available on the tour, including Speaker Pelosi's conference room. These requests have been denied by the government in those cases and motions for access will be filed in those cases as well.

Respectfully Submitted,

By: Kira Anne West

\_\_\_\_/s/_____

Kira Anne West
DC Bar No. 993523
712 H. Street N.E., Unit 509
Washington, D.C.  20002
(202)-236-2042
kiraannewest@gmail.com
Attorney for Mr. Egtvedt

Nicole Cubbage
DC Bar No. 999203
712 H. Street N.E., Unit 570
Washington, DC 20002
(703)209-4546
Cubbagelaw@gmail.com
Attorney for Mr. Egtvedt

Certificate of Service

I certify that a copy of the forgoing was filed electronically via ECF on all parties of record on this 7th day of July, 2022.

\_\_\_\_/s/_____
Kira Anne West
Attorney for Mr. Egtvedt