**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CASE NO. 1:21-cr-00177 (CRC)** |
| | **:** | |
| **DANIEL DEAN EGTVEDT** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE CERTAIN DEFENSE**
**ARGUMENTS AT TRIAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, denies that defendant Daniel Egtvedt (hereinafter, "Egtvedt" and the "defendant") acted with the public authority claimed in his written Notice of Public Authority Defense, and respectfully submits that this Court should preclude defendant Daniel Egtvedt from raising a public-authority defense at trial. For the reasons set forth below, the defense Egtvedt purports to raise is improper.

Egtvedt's assertion that he cannot be held criminally liable because his actions were authorized by former President Trump must be precluded because, as another judge of this District has recognized, "following orders, without more, can[not] transform an illegal act into a legal one" and since "a President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government . . . Put simply, even if former President Trump in fact [explicitly directed the rioters' actions,] his statements would not immunize defendants charged with offenses arising from the January 6

1

assault on the Capitol from criminal liability." *United States v. Chrestman*, 525 F. Supp. 3d 14, 32-33 (D.D.C. 2021).

**ARGUMENT**

The defendant should be precluded from advancing any public authority or related defenses.

**I.     The defendant failed to provide timely notice pursuant to Federal Rule of Criminal Procedure 12.3(a)(1) of their intent to assert a defense of actual or believed exercise of public authority and are therefore barred from raising such a defense at trial.**

Federal Rule of Criminal Procedure 12.3(a)(1) requires defendants to provide notice if they "intend[ ] to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense." Such notice must be in writing and be filed with the clerk "within the time provided for filing a pretrial motion, or at any later time the court sets." Fed. R. Crim. P. 12.3(a)(1). The notice must contain the law enforcement or federal intelligence agency involved, the specific agency member, and the time during which the defendant claims to have acted with public authority. Fed. R. Crim. P. 12.3(a)(2)(A)-(C). A failure to comply allows the court to exclude the testimony of any undisclosed witness except the defendant. Fed. R. Crim. P. 12.3(c).

The Court issued a Pre-Trial Order on January 6, 2022 setting forth various procedures and filing deadlines for the case, which was originally scheduled for trial on June 6, 2022.  ECF No. 46.  The Court ordered that any suppression motions be filed on or before March 28, 2022, and all other pre-trial motions, including motions in limine, be filed on or before April 25, 2022.  *Id*. On May 11, 2022, the defendant filed an Unopposed Motion to Continue Trial Date, *see* ECF No. 76, and the trial was rescheduled for December 5, 2022.  On November 29, 2022, the defendant sent an email to the government in which he notified the government for the first time that he intended

2

to raise a public authority defense. *See* Exhibit A, November 29, 2022 Letter regarding Notice of Public Authority Defense. As the deadline for pretrial motions has now expired, the defendant should be precluded from asserting a defense of public authority. Fed. R. Crim. P. 12.3(c).

**II.   No Executive official could empower Egtvedt, explicitly or implicitly, to commit the criminal conduct he engaged in on January 6, rendering the public authority defense unavailable.**

As an initial matter, former President Trump did not have the authority to permit or authorize the criminal conduct engaged in by Egtvedt—including obstruction of Congress, assaulting, resisting or impeding certain officers, civil disorder, unlawful entry, and disorderly conduct—on January 6. This is not the first time courts have heard the attempted defense that high-ranking government officials authorized criminal misconduct, commonly referred to as the "public-authority" defense. "The public authority defense allows 'the defendant [to] seek[ ] exoneration based on the fact that he reasonably relied" on the "actual authority of a government official to engage him in a covert activity.'" *United States v. Fulcher* 250 F.3d 244, 253-54 (4th Cir. 2001); *see* Fed. R. Crim. P. 12.3(a)(1).[1] Here, Egtvedt's "public-authority" defense, if raised at trial, would fail for at least two reasons: no government agent possessed actual authority to order or sanction Egtvedt's criminal actions, and, in any event, it would have been objectively unreasonable to rely on any such order.

"The validity of" the public-authority "defense depends upon whether the government agent in fact had authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the 'public authority' [defense]." *United*

---

[1] "Rule 12.3 sets forth a notice requirement but does not limit or expand the public authority defense," which was defined by federal common law prior to that Rule's adoption. *United States v. Burrows*, 36 F.3d 875, 881 (9th Cir. 1994).

*States v. Burrows*, 36 F.3d 875, 881-82 (9th Cir. 1994) (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)). The circuits that have considered the issue are unanimous on that point. *See, e.g., United States v. Sariles*, 645 F.3d 315, 318-19 (5th Cir. 2011) ("the public authority defense requires the defendant reasonably to rely on . . . actual, not apparent, authority"); *Fulcher*, 250 F.3d at 254 ("we adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official"); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626 (2017); *United States v. Holmquist*, 36 F.3d 154, 161 nn. 6-7 (1st Cir. 1994) (characterizing as "nonexistent" and "not a defense at all" the "'defense' of apparent public authority" based "on a mistaken but good-faith belief that one's conduct is authorized by the government"); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir. 1984) (declining to adopt view that "a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real"); *cf. United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980) (noting in dicta that defendants' claim that CIA officer had conspired with them to murder an ambassador "would not have created a defense if appellants' participation in the crimes had been established," and therefore describing evidence of the officer's employment with the CIA as likely "immaterial").

Former President Trump did not have the authority to permit or authorize the corrupt obstruction of the Electoral College vote certification, nor could he have lawfully sanctioned the attack on the United States Capitol on January 6 or any of the other criminal conduct perpetrated by Egtvedt or his fellow rioters. In rejecting the idea of an entrapment-by-estoppel defense for January 6 defendants, Chief Judge Howell recognized that:

> [A President] cannot, in keeping with his constitutional function and his
> responsibilities under Article II, lawfully permit actions that directly undermine the

Constitution. Thus, a President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government. Were a President to attempt to condone such conduct, he would act *ultra vires* and thus without the force of his constitutional authority. . . . Put simply, even if former President Trump in fact [explicitly directed the rioters' actions,] his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability.

*Chrestman*, 525 F. Supp. 3d at 32–33.

The D.C. Circuit came to the same conclusion in *United States v. North*, 910 F.2d 843, 879 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990). In the wake of the Iran-Contra scandal, Lieutenant Colonel Oliver North faced criminal prosecution for conduct that North said he had been directed to engage in by the National Security Advisor to President Reagan, allegedly with the President's acquiescence or approval. North was a high-ranking government official indisputably working on behalf of the Administration; his superior, the National Security Advisor, had not only condoned but engaged in similar misconduct; and his superior reported directly to the President. North subpoenaed the former President Ronald Reagan to be a witness at his trial. North also requested that the trial court use this jury instruction at his trial: "If you find that . . . North acted in good faith on a superior's apparent authorization of his action, and that his reliance was reasonable based on the facts as he perceived them, that is a complete defense . . . ." *North*, 910 F.2d at 879.

The D.C. Circuit flatly rejected North's claim that he could raise a good-faith defense based on the apparent or implied authorization by his superiors in the Executive Branch:

North's suggested instruction, quoted above, goes so far as to conjure up the notion of a "Nuremberg" defense, a notion from which our criminal justice system, one based on individual accountability and responsibility, has historically recoiled. In the absence of clear and comprehensible Circuit authority that we must do so, we refuse to hold that following orders, without more, can transform an illegal act into a legal one.

*Id.* at 881. The D.C. Circuit similarly concluded that whether North "was following President Reagan's orders" was "immaterial" to whether North intended to "corruptly" obstruct Congress under 18 U.S.C. § 1505. *Id.* at 884. In so doing, the Court rejected North's "stunning" idea that he could "escape the criminal consequences of his otherwise unlawful acts merely by asserting that his reason for committing the acts was that he was 'following orders.'" *Id.* at 883-84.[2]

Egtvedt's claim of public authorization is weaker than North's unsuccessful claim in virtually every respect. He has no personal connection to any of the individuals who allegedly authorized his conduct. He is not—nor ever has been—a federal government official, let alone a government official engaged in high-level national security work. Instead, he is a member of the public who claims, without any further particularity, that "he was and believed he was directed and authorized to go to the Capitol building and enter the Capitol Grounds by Donald Trump and his various agents and representatives." *See* Exhibit A, November 29, 2022 Letter regarding Notice of

---

[2] The D.C. Circuit's decision in *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976) (per curiam) is not to the contrary. In *Barker*, the court reversed the convictions of two defendants who participated in the burglary of Daniel Ellsberg's psychiatrist's office. The defendants claimed they did so at the behest of E. Howard Hunt, a long-time CIA agent who worked under the supervision of John Ehrlichman in the White House. *North*, 910 F.2d at 879. The case featured fractured separate opinions from the three-judge panel. Judge Wilkey, half of the two-judge majority, wrote that a defendant's reasonable reliance on the "apparent authority" of a government official (there, Hunt) to authorize his conduct could make out a defense. *Id.* (quoting *Barker*, 546 F.2d at 949 (opinion of Wilkey, J.). But that portion of *Barker* was not the controlling rationale, and the panel majority in *North* subsequently rejected North's request for an instruction invoking his superiors' "apparent authorization of his action." *Id.* at 881. In any event, Judge Wilkey's application of reasonable reliance in *Barker*—where the defendants, each of whom had worked with the CIA, claimed that a government official (and previous CIA supervisor) authorized what they allegedly were told was a counter-espionage operation—has no analogue here. *Barker* therefore does not undermine straightforward principle that the President lacks the authority to empower citizens to enter restricted Capitol grounds and buildings, obstruct congressional proceedings, or engage in civil disorder. *See, e.g.*, *North*, 910 F.2d at 891 n.24.

Public Authority Defense. Based on that, Egtvedt contends that he is entitled to argue that any ensuing criminal conduct, which included unlawfully entering the Capitol, navigating the building, imploring other rioters to come into the building, yelling at and assaulting officers, and obstructing Congress's certification of the Electoral College vote, was authorized and immune from prosecution.

III.   **Any related entrapment-by-estoppel defense also fails because Egtvedt cannot point to a government interpretation of the statutes that he is charged with violating on which he reasonably relied.**

Because "[t]he difference between the entrapment by estoppel defense and the public authority defense is not great," in an abundance of caution, the government addresses why the entrapment-by-estoppel defense also must be rejected. *Burrows*, 36 F.3d at 882; *see also United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) ("The elements that comprise the two defenses are quite similar."). Courts have narrowly confined the entrapment-by-estoppel defense. The Supreme Court first adopted a due process defense to entrapment by public officials in *Raley v. Ohio*, 360 U.S. 423 (1959). In *Raley*, the Supreme Court set aside the convictions of three individuals who refused to answer the questions of the Ohio Un-American Activities Commission, in reliance on inaccurate representations by the Commission "that they had a right to rely on the privilege against self-incrimination" under the Ohio Constitution. 360 U.S. at 425. The Court held that the convictions violated the Fourteenth Amendment's Due Process Clause because they involved "the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him." *Id.* at 438. The Court emphasized that the Commission's advice constituted "active misleading" as to the contours of that "vague and undefined" area of law. *Id.*

A few years later, the Supreme Court revisited the subject in *Cox v. Louisiana*, 379 U.S. 559 (1965). *Cox* reversed the conviction of a protester who had led a group of 2,000 in a civil rights march across the street from a courthouse and was later prosecuted for violating an anti-picketing statute prohibiting demonstrations "near" a courthouse. 379 U.S. at 560, 564-65. The statute did not define that term. *Id.* at 560. The protesters had been "affirmatively told" by "the highest police officials of the city, in the presence of the Sheriff and Mayor," that protesting across the street from the courthouse was lawful under that statute. *Id.* at 571. The Court determined that the statute's ambiguous term "near" necessarily "foresees a degree of on-the-spot administrative interpretation by officials charged with responsibility for administering and enforcing it," and thus found that the demonstrators "would justifiably tend to rely on [the police's] administrative interpretation of how 'near' the courthouse a particular demonstration might take place." *Id.* at 568-69. The Court concluded that the local officials' interpretation of "near" was a "limited administrative regulation of traffic" upon which the protesters reasonably relied. *Id.* at 569. But it also made clear that a defendant cannot reasonably rely on a law enforcement official's attempt to provide "a waiver of law," which the Court described as "beyond the power of the police." *Id.*

Distilling these cases, recent case law has limited the entrapment-by-estoppel defense to the narrow circumstances in which a defendant reasonably relies on a government agent's interpretation of a statute that, if accurate, would render the defendant's conduct non-criminal. "To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in

light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *Cox*, 906 F.3d at 1191; *see also United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996) ("[W]e have required that [1] the government official 'actively mislead the defendant; and that the defendant's reliance be [2] actual and [3] reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation.'"); *Burrows*, 36 F.3d 875 at 882 ("This defense applies when [1] a government official [2] tells a defendant that certain conduct is legal and the defendant commits what would otherwise be a crime [3] in reasonable reliance on the official's representation." (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)). Last year, another judge of this Court adopted the Tenth Circuit's four-part test from *Cox* in preliminarily rejecting a Capitol riot defendant's claim to the entrapment-by-estoppel defense. *See Chrestman*, 525 F. Supp. 3d at 33.

Here, Egtvedt cannot satisfy any part of the entrapment-by-estoppel test. Egtvedt was not actively misled. Neither in his speech on January 6, 2021, nor beforehand, did former President Trump or any other government actor purport to interpret the scope of the statutes Egtvedt is charged with violating. Said another way, whether or not Egtvedt "believed he was directed and authorized to engage in the conduct set forth in the indictment," there is no evidence that former President Trump "affirmatively assured the defendant that certain conduct [was] legal." *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994); *United States v. Troncoso*, 23 F.3d 612, 615 (1st Cir. 1994) (defense fails absent advice from official that conduct "was actually legal").

As the Court observed last year in *Chrestman*, an entrapment-by-estoppel defense by a January 6 rioter:

> would not be premised, as it was in *Raley* [and] *Cox*, . . . on a defendant's confusion about the state of the law and a government official's clarifying, if inaccurate, representations. It would instead rely on the premise that a defendant, though aware

that his intended conduct was illegal, acted under the belief President Trump had waived the entire corpus of criminal law as it applied to the mob.

*Chrestman*, 525 F. Supp. 3d at 32; *see also United States v. Smith*, 940 F.2d 710, 715 (1st Cir. 1991) (rejecting entrapment-by-estoppel defense because federal agent allegedly encouraged defendant to keep firearms to assist with undercover operation, but never was alleged "to have represented that keeping the guns was, in fact, *legal*"); *North*, 910 F.2d 843 (noting that "North does not even claim that he relied on *any* 'conclusion or statement of *law*'"). Absent any government statement upon which the defendants could have arguably relied, the analysis can stop here.

## IV.   Egtvedt's purported belief that Trump's statements, or the statutes Egtvedt is charged with violating, authorized his criminal conduct is objectively unreasonable.

For both the public authority defense and the entrapment-by-estoppel defense, a defendant must also show that his reliance on governmental authority was reasonable as well as sincere. *See, e.g., Chrestman,* 525 F. Supp. 3d at 33 (adopting Cox's four-part test for entrapment-by-estoppel defense); *Burrows*, 36 F.3d at 882 ("a defendant makes out a defense of public authority only when he has shown that his reliance on governmental authority was reasonable as well as sincere"); *Fulcher*, 250 F.3d at 254; *Sariles*, 645 F.3d at 318-19. This reasonableness requirement is necessary to ensure the "uniform enforcement of law;" otherwise, anyone could interpret a public official's actions or statements as authorizing them to engage in criminal conduct. *Id.* (quoting *United States v. Lansing*, 424 F.2d 225 (9th Cir. 1970)). Any claim that Egtvedt sincerely believed he had been authorized as an agent of the Executive Branch to forcibly stop Congress's certification of the vote by breaking into the Capitol would be objectively unreasonable. Similarly, even if former President Trump's or his representatives' statements could be construed as an

unexpressed interpretation of the criminal laws applicable to Egtvedt's conduct, and even if Egtvedt relied on that interpretation, Egtvedt cannot show that such reliance was reasonable.

"[R]easonable reliance occurs" only "if 'a person sincerely desirous of obeying the law would have accepted the information as true and would not have been put on notice to make further inquiries.'" *United States v. Lynch*, 903 F.3d 1061, 1077 (9th Cir. 2018) (internal quotation marks omitted); *United States v. Corso*, 20 F.3d 521, 528 (2d Cir. 1994) (adopting "sincerely desirous" standard). Egtvedt, along with a mob of other rioters, took countless unlawful steps, including unlawfully entering the Capitol, navigating the building, imploring other rioters to come into the building, yelling at and assaulting officers, and obstructing Congress's certification of the Electoral College vote.

Egtvedt could not have reasonably relied on statements by former President Trump or his representatives—or, indeed, anyone—to conclude that that conduct was lawful. Thus, regardless of former President Trump's and his representatives' intent or the foreseeability of Egtvedt's and other rioters' reactions to their statements, when Egtvedt unlawfully entered the Capitol, navigated the building, implored other rioters to come into the building, yelled at and assaulted officers, and obstructed Congress's certification of the Electoral College vote, any reasonable person in his shoes would "[know] he was breaking the law." *Corso*, 20 F.3d at 529. Certainly, one "sincerely desirous of obeying the law" could not have accepted at face value any purported assurance that such conduct was lawful. *Lynch*, 903 F.3d at 1077-78. Egtvedt therefore cannot rely on these defenses. For these reasons, the Court should reject Egtvedt's attempt to deflect responsibility, and preclude Egtvedt from raising the public authority or entrapment-by-estoppel defense.[3]

---

[3] To the extent Egtvedt may argue that statements from the former President are relevant to his intent, any such evidence should be limited under Federal Rule of Evidence 403 to those statements, and not include any witnesses (other than Egtvedt himself) to testify about those statements.

## CONCLUSION

For the reasons discussed above, this Court should preclude the defendant from raising a public authority defense at trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:      */s/ Colleen D. Kukowski*
Colleen D. Kukowski
Assistant United States Attorney
D.C. Bar No. 1012458
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2646
Colleen.Kukowski@usdoj.gov

Michael C. Liebman
Assistant United States Attorney
D.C. Bar no. 479562
601 D Street, N.W., room 4-1501
Washington, D.C.  20530
(202) 252-7243
Michael.Liebman@usdoj.gov