UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL DEAN EGTVEDT<br><br>Defendant. | Case No. 21-cr-177-CRC |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION FOR BOND PENDING APPEAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Daniel Egtvedt's Motion for Bond Pending Appeal (ECF 146). Egtvedt bases his request for release on the United States Court of Appeals for the District of Columbia Circuit's decision in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024). Egtvedt cannot overcome the high barrier for release pending appeal required by 18 U.S.C. § 3143(b). Although *Brock* resolved some of Egtvedt's appellate challenges in his favor, Egtvedt cannot show (1) that the application of *Brock* to his case likely will reduce his sentence to a term of imprisonment that will expire before his appeal is decided, or (2) by clear and convincing evidence that he does not pose a danger to the community and is not a flight risk. Egtvedt's motion should be denied.

I.  BACKGROUND AND PROCEDURAL HISTORY

In the early afternoon of January 6, 2021, Egtvedt marched from former President Trump's rally to the northwest corner of the U.S. Capitol Grounds. When Egtvedt arrived on the restricted Capitol Grounds, he watched the unfolding chaos and chose to be an active participant in the

1

attempted insurrection. Egtvedt made his way to the Senate Wing Doors, where he antagonized officers who were attempting to prevent rioters from breaching the Senate Wing Doors for a second time that day. Notwithstanding the fact that an officer pepper sprayed him, Egtvedt joined the rioters who overran those officers and breached the Senate Wing Doors at approximately 2:48 p.m.

Once inside the Capitol, Egtvedt gave a recorded interview to another rioter in which he implored others to "*come down here now*" and pronounced, "*Congressmen . . . grow a spine or fucking resign*!" Egtvedt remained inside the Capitol for approximately 27 minutes, during which time he confronted, verbally berated, and physically resisted and impeded police officers, all in an effort to stop the certification of the election. In doing so, he caused an injury to one officer's shoulder. Egtvedt remained on the Capitol Grounds even after he was forcibly removed from the Capitol, and gave a second recorded interview in which he yet again implored others to join in the riots. In his second interview, Egtvedt announced, "*We are in treasonous situations here. People, please come down to the United States Capitol, right now*."

On November 10, 2021, a federal grand jury returned a superseding indictment charging Egtvedt with nine counts for his conduct on January 6, 2021: Count One, Assaulting, Resisting, or Impeding Officer M.M., in violation of 18 U.S.C. § 111(a)(1); Count Two, Assaulting, Resisting, or Impeding Officer M.D., in violation of 18 U.S.C. § 111(a)(1); Count Three, Interfering with Law Enforcement During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Count Four, Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; Count Five, Entering or Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Count Six, Disorderly or Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Count Seven, Engaging in Physical Violence in a Restricted Building or

Grounds, in violation of 18 U.S.C. § 1752(a)(4); Count Eight, Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Count Nine, Engaging in Act of Physical Violence in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Nine) (ECF 43).

On December 16, 2022, after a bench trial, the Court returned a verdict of guilty on seven of the nine counts, specifically: Count One, Assaulting, Resisting, or Impeding Officer M.M; Count Two, Assaulting, Resisting, or Impeding Officer M.D.; Count Three, Interfering with Law Enforcement During a Civil Disorder; Count Four, Obstruction of an Official Proceeding; Count Five, Entering or Remaining in a Restricted Building or Grounds; Count Six, Disorderly or Disruptive Conduct in a Restricted Building or Grounds; and Count Eight, Disorderly Conduct in a Capitol Building. See Minute Order 12/16/2022.

The Court sentenced Egtvedt on March 16, 2023. At sentencing, Count Four (obstruction of an official proceeding) drove the sentence because Count Four produced the highest guidelines range. The Court determined that Egtvedt's adjusted offense level was 25, which resulted in an advisory Guidelines range of 56 to 71 months. Sentencing Hearing Transcript ("Tr.") at 20. The Court reached this calculation by adding, over Egtvedt's objection, eight offense levels to the Sentencing Guidelines calculation on Count Four under U.S.S.G. § 2J1.2(b)(1)(B) because the offense involved causing or threatening physical injury to a person or property damage in order to obstruct the administration of justice. *Id.* at 18-20. The Court also added three offense levels under § 2J1.2(b)(2) because the offense resulted in the substantial interference with the administration of justice, specifically the proceedings of Congress. *Id*.

The Court sentenced Egtvedt to the following terms of incarceration, all to run concurrently:

3

**Counts One – Assaulting, Resisting, Or Impeding Certain Officers (Officer M.M.)**:

Thirty-six months of incarceration.

**Counts Two – Assaulting, Resisting, Or Impeding Certain Officers (Officer M.D.)**:

Thirty-six   months of incarceration.

**Count Three – Civil Disorder:** Thirty-six months of incarceration.

**Count Four – Obstruction of an Official Proceeding**: Forty-two months of incarceration.

**Count Five – Entering or Remaining in a Restricted Building or Grounds**: Twelve months of incarceration.

**Count Six – Disorderly or Disruptive Conduct in a Restricted Building or Grounds**: Twelve months of incarceration.

**Count Eight – Disorderly Conduct in a Capitol Building**: One month of incarceration.

Egtvedt was also sentenced to restitution in the amount of $2,000. *See* ECF 128.

Egtvedt filed a notice of appeal on March 26, 2023 (ECF 130). On appeal, Egtvedt challenges his conviction and sentence for Count Four; his appeal does not challenge his convictions or sentences on Counts One, Two, or Three. On November 29, 2023, the government filed a motion to hold Egtvedt's appeal in abeyance pending issuance of the mandate in *United States v. Fischer*, No. 22-3038, and *United States v. Brock*, No. 22-3045. On December 13, 2023, the Supreme Court granted certiorari in *Fischer*. *See Fischer v. United States*, No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13, 2023). On January 16, 2024, the D.C. Circuit granted the government's motion to hold Egtvedt's appeal in abeyance pending the issuance of the mandate in both *Fischer* and *Brock*.

On March 1, 2024, the D.C. Circuit issued its decision in *United States v. Brock*, 94 F.4th

39 (D.C. Cir. 2024), which held that the term "administration of justice," as used in U.S.S.G. § 2J1.2, does not apply to Congress's certification of electoral college votes. *See id*. at *8.[1] On March 25, 2024, Egtvedt filed the instant Motion for Release Pending Appeal (ECF 146). Meanwhile, the Supreme Court has scheduled oral argument in *Fischer* for April 16, 2024, and is expected to issue its decision before its term ends in June 2024.

## II. LEGAL STANDARD

Under 18 U.S.C. § 3143(b), a defendant who has been sentenced to a term of imprisonment "shall . . . be detained" unless the court finds that two separate requirements are met:

> (1) "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," and
> (2) that the appeal "raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(A)-(B). The requirements for "reversal" and "an order for a new trial" encompass all counts, not just a single count. *United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1988) (explaining that defendants "cannot be released unless the appeal raises a substantial question likely to result in reversal of *all counts* on which imprisonment is imposed") (emphasis supplied). If a judicial officer finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time

---

[1] *Brock* did not consider the eight-level enhancement in § 2J1.2(b)(1)(B), which applies if an offense "involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice." Nonetheless, the government acknowledges that the same reasoning the *Brock* court used to limit application of § 2J1.2(b)(2) would apply.

5

already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b)(1)(B). It is Egtvedt's burden to make the requisite showing under 18 U.S.C. § 3143(b)(1)(B). *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

### III.     ARGUMENT

Egtvedt's motion for release pending appeal, based on *Brock*, fails to overcome the high barrier to release under § 3143(b)(1). Although the government does not dispute that, in light of *Brock*, Egtvedt's challenge to the application of U.S.S.G. §§ 2J1.2(b)(1)(B) and (b)(2) poses a substantial question, as required under the second prong of § 3143(b)(1)(B), Egtvedt does not meet his burden with regard to the other § 3143(b)(1) requirements. Specifically, it is not likely that the inapplicability of §§ 2J1.2(b)(1)(B) and (b)(2) would result in a reduced term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. Moreover, Egtvedt fails to establish by clear and convincing evidence that he is unlikely to pose a danger to the safety of any other person or the community if released. For each of these reasons, Egtvedt's motion should be denied.

> **a. Even if Egtvedt Prevailed As to His Arguments on Count Four, His Appeal Will Not Result in a Reversal of All Counts and Is Not Likely to Result in a Reduced Prison Sentence Entitling Him to Release.**

Egtvedt's appeal and the instant motion focus on a single count of conviction, Count Four, Obstruction of an Official Proceeding. However, even putting aside Count Four, Egtvedt fails to show that he is entitled to release. To start, Egtvedt ignores that he was convicted of and had incarceration imposed for three additional felony counts and three misdemeanor counts. These

6

other convictions are not implicated by *Fischer* or *Brock*, and are not challenged in Egtvedt's appeal. Thus, Egtvedt cannot show that his appeal is likely to lead to a reversal of his convictions *all* counts. *Perholtz*, 836 F.2d at 557.

Moreover, Egtvedt incorrectly assumes that a lower Guidelines range for Count Four will automatically result in a combined adjusted offense level of 14, with a Guidelines range of 15–21 months, and that he will be sentenced at the bottom of the Guidelines. At sentencing, Count Four drove Egtvedt's sentence because Count Four produced the highest guidelines range. But without the §§ 2J1.2(b)(1)(B) and (b)(2) enhancements, Count Four would no longer drive the sentence. Instead, Count Two, Assaulting, Resisting, Or Impeding Certain Officers (Officer M.D.), would drive the sentence because Count Two now produces the highest Guidelines range. When Count Two drives the Guidelines range, Egtvedt cannot meet his burden because his appeal still is not likely to result in a reduced period of incarceration entitling him to release.

Count Two's adjusted offense level should be calculated as follows:

| Base Offense Level: | 10 | USSG § 2A2.4 |
|---|---|---|
| Specific Offense Characteristic | +3 | USSG § 2A2.4(b)(1)(A): "If . . . the offense involved physical contact . . . increase by **3** levels." |
| Specific Offense Characteristic | +2 | USSG § 2A2.4(b)(2): "If the victim sustained bodily injury, increase by **2** levels." |
| Adjusted Offense Level | 15 | |

Additionally, removing the eight-level enhancement under U.S.S.G. § 2J1.2(b)(1)(B) will change the grouping analysis, which at a minimum would add two units to Egtvedt's combined offense level.[2] At sentencing, Counts One through Three grouped with Count Four because they involved

---

[2] Under U.S.S.G. §§ 3D1.1(a)(1) and 3D1.2, "closely related counts" group. More specifically, under U.S.S.G. § 3D1.2(a) and (b), counts are grouped together when they "involve the same

physical contact with multiple victims and injury to a victim, which was embodied in the eight-level enhancement to Count Four. By removing the eight-level enhancement, Counts One, Two and Three would no longer group with Count Four. At a minimum, the defendant's convictions would be grouped into two separate groups because Counts One and Two involve harm to two separate victims, U.S. Capitol Police Officer M.M. and Metropolitan Police Department Officer M.D.[3] This would add two additional units to Egtvedt's combined offense level. As a result, Egtvedt's combined offense level would be 17 and his Guidelines range would be 24–30 months.

Even if the Court declined to depart or vary upward from the Guidelines range of 24–30 months, Egtvedt is still not entitled to release. Egtvedt has served approximately 14 months of his sentence, and the severity of his conduct warrants a sentence at the top of that range (30 months)—16 months more than he has served. It is likely his appeal will be decided well within that time. Although the appeal is currently stayed pending the Supreme Court's decision in *Fischer*, the government anticipates the Supreme Court will issue its decision in June 2024, before its summer recess. Once that occurs, Egtvedt's appeal may proceed expeditiously.[4] Egtvedt's appeal therefore should be resolved well within the remaining time of a high-end Guidelines sentence.[5]

---

victim" and either the same "act or transaction" or "two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." Also, under U.S.S.G. § 3D1.2(c), a count that "embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts," should be grouped with that other count.

[3] At any resentencing, the government may argue that there are as many as three groups, which would add three units to Egtvedt's combined offense level and result in a combined offense level of 18, with a Guidelines range of 27-33 months.

[4] Many of the steps that cause appellate delays have already been completed. For example, the transcripts have already been completed, and Egtvedt has already filed his Brief for the Appellant.

[5] For the year ending September 30, 2023, the median time interval from the filing of a notice of

Thus, even when Count Two drives Egtvedt's sentence, his term of incarceration will extend beyond the duration of his appeal in this case. Egtvedt therefore cannot show that application of *Brock* is "likely" to lead to "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process" and release pending his appeal is unwarranted.

### b. Egtvedt Has Not Shown Likelihood of a Reduced Sentence on Count Four that Would Expire Before His Appeal is Resolved

Egtvedt also cannot show that application of *Brock* is "likely" to lead to a reduced sentence for Count Four that is "a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."[6] Even without the eight-level enhancement under U.S.S.G. § 2J1.2(b)(1)(B) and the three-level enhancement under § 2J1.2(b)(2), Egtvedt's sentence will not automatically be shorter. Egtvedt incorrectly assumes that he is entitled to a sentence on the low end of the new Guidelines range. However, if the Court sentences the defendant within the

---

appeal to disposition in the D.C. Circuit was 10.9 months. *See* U.S. Courts Caseload Statistics Data, Table B-4, https://www.uscourts.gov/sites/default/files/data_tables/jb_b4_0930.2023.pdf.

[6] Egtvedt also challenges on appeal his §1512(c)(2) conviction based on the issues raised in *Fischer*. Although he does not argue it as a basis for release, the government notes that Egtvedt's challenge to his § 1512(c)(2) conviction does not entitle him to release for the same reasons his *Brock*-based arguments fail. First, Egtvedt cannot show that his *Fischer*-based argument is likely to result in reversal on all counts, or a reduced sentence as required by § 3143(b)(1)(B)(iv). As explained, the government anticipates that *Fischer* will be decided in June 2024. Even without the § 1512(c)(2) count driving Egtvedt's sentence, Egtvedt faces a Guidelines range of at least 24-30 months, and in any event, this Court should depart or vary upward given the severity of Egtvedt's conduct. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proved by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction."). Second, Egtvedt has failed to show that he is not dangerous.

9

new Guidelines range of 24-30 months, analysis of the 18 U.S.C. § 3553(a) factors, discussed below, shows that he should not be given the low end of the new Guidelines range. To the contrary, the record in this case makes it abundantly clearly that if the Court were to sentence Egtvedt within the Guidelines, it should be to the top of the Guidelines. Moreover, the record makes it clear that the Court can, and should, vary or depart upward from the Guidelines.

### i. Upward Variance

A "variance" is imposed "outside the guidelines framework" based under the applicable 18 U.S.C. § 3553(a) factors taken as a whole. *United States v. Murray*, 897 F.3d 298, 309 n.8 (D.C. Cir. 2018). The Court varied downward from the Guidelines in its original sentence, and if Egtvedt were to be resentenced on Count Four after the application of *Brock*, the government would request an upward variance. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *Id*. at 308-09 (cleaned up).

In explaining how it arrived at Egtvedt's sentence, the Court stated, "Mr. Egtvedt, we talk a lot about guidelines ranges and numbers and enhancements, and sometimes I feel bad about that because it gives the impression that we don't fashion sentences individually based on each person and their conduct and all of the circumstances surrounding their case, and I want to assure you that I've tried my best to do that in this case." Tr. at 80-81. The Court then discussed the Guidelines range, and stated that he was varying from the Guidelines because the eight-level enhancement in particular "overstates the seriousness" of Egtvedt's conduct. *Id.* at 81. The Court continued, however, to state, "I've seen a lot of these cases, and you were among the most disruptive and belligerent and threatening and dangerous instigators there." *Id*. at 82. The Court then fashioned a

10

sentence for Egtvedt that was based upon his specific conduct, his specific history and character, and the needs for the sentence imposed on Egtvedt specifically.

The Court considered Egtvedt's conduct on January 6, 2021, finding that Egtvedt's conduct was dangerous because it "put lots of people at risk of physical harm" and caused injury to an officer. *Id*. at 82. The Court continued to find that Egtvedt was "part of the group that overran the police line" outside of the doors / just inside the doors of the Capitol, that he tried to get back into the Capitol after he had been removed, and tried to call others into the Capitol as well. *Id*. The Court also considered "the larger damage that [Egtvedt's] participation in the riot caused to our democracy and our democratic institutions and to our politics." *Id*. Additionally, the Court considered that Egtvedt did not accept responsibility for his actions, noting "[t]here may be some general expression of regret, but there's a lot more blame." *Id*. at 84. The Court highlighted, "I didn't hear an apology to Officer Marshall or to Officer DaCruz or to any of the young congressional staffers who were cowering behind some of those doors that you were shouting outside of." *Id*.

Additionally, the Court considered Egtvedt's lack of criminal record, his employment history, family support, and mental health concerns. *Id*. at 85. Finally, the Court considered other defendants that were similarly situated to Egtvedt, including Thomas Robertson, who the Court found to have conduct similar to Egtvedt's, but sentenced within the Guidelines because of other aggravating factors.[7] After considering all these 18 U.S.C. § 3553(a) factors and the Guidelines,

---

[7] In *United States v. Thomas Robertson*, 21-cr-34 (CRC), a jury convicted Robertson of charges to include 18 U.S.C. § 1512(c)(2) and § 231(a)(3). Robertson faced a Guidelines range of 87 to 108 months, and was sentenced to 87 months' imprisonment.

the Court varied downward from the Guidelines range to impose a sentence of 42 months on Count Four. *Id.* at 87.

The D.C. Circuit's ruling in *Brock* does not undercut any of the Court's findings regarding the severity of Egtvedt's crime or the need for punishment in his case, and there is no reason why the Court should alter its sentence, given that the Guidelines were never determinative of the sentence. While the D.C. Circuit resolved *Brock* on a technical linguistics interpretation of a Guidelines enhancement, even *Brock* acknowledged the mismatch between those who interfere with a court proceeding as opposed to the certification. *Brock*, 94 F.4th at 59 ("Maybe. But that is a policy argument the government can present to the [Sentencing] Commission."). In other words, regardless of what any new Guidelines range would be, it would be appropriate for the Court to vary from the Guidelines to reach the same sentence that appropriately accounts for the uniquely disturbing events of January 6, and Egtvedt's role in those events.

Indeed, as the government noted at the sentencing hearing, if the Court did not apply the sentencing enhancements, the government would have nevertheless requested an upward variance due to the egregiousness of Egtvedt's conduct. Tr. at 32-33. At any resentencing, an upward variance would now be warranted to account for the § 3553(a) sentencing factors—specifically, the unique nature, circumstances, and seriousness of the offense, Egtvedt's characteristics, and the need to avoid unwarranted sentencing disparities.

Applying an upward variance to a § 1512(c) conviction for a Capitol riot defendant is not unprecedented, and will not create unwarranted sentencing disparities among the Capitol riot defendants. As Judge McFadden stated in a sentencing hearing before the D.C. Circuit decided *Brock*:

12

> Regardless of whether the 'administration of justice' language actually applies to this situation, I have no doubt that the Commission would have intended for this to apply to substantial interference with an official proceeding like a certification process, which is itself more significant than almost any court proceeding. . . . [Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources.\

*United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87 (emphasis added); *see also United States v. Fonticoba*, 21-cr-368 (TJK), Sent'g Tr. 1/11/24 at 66-67 (stating that, even if Egtvedt's § 1512 conviction were invalidated, a significant upward variance would be warranted to account for Egtvedt's intent "to obstruct the proceeding and the nature of the proceeding itself") (emphasis added); *see also United States v. Bender*, et al., 21-cr-508 (BAH), Memorandum Opinion (March 6, 2024), ECF 161 at 3 n.1. For this reason, despite finding that the three-level enhancement does not apply, Judge McFadden has often varied upward when sentencing defendants in cases where 1512(c)(2) is the lead charge. *See, e.g., United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87; *United States v. Seefried*, 21-cr-287 (TNM), Sent'g Tr. 10/24/22 at 53-54; *United States v. Speed*, 22-cr-244 (TNM), Sent'g Tr. 5/8/23 at 39-42.

Here, an analysis of the § 3553(a) sentencing factors shows that Egtvedt should not be sentenced to the bottom of the new Guidelines range of 24-30 months. Instead, the sentencing factors make it abundantly clear that the Court should vary upward from the new Guidelines range and maintain the original 42-month sentence for Count Four.

### ii. Upward Departure

Additionally, the Court could apply an upward departure to arrive at the same 42-month sentence for Count Four. A "departure" is based on "the framework set out in the Guidelines."

*United States v. Murray*, 897 F.3d 298, 309 n.8 (D.C. Cir. 2018). Specific departure statements reflect Commission guidance on what makes a case "atypical" and when departures are "encouraged." *Koon*, 518 U.S. at 94-95. One such circumstance is when an offense results in "a significant disruption of a governmental function." U.S.S.G. § 5K2.7. A departure under this Guideline is warranted in "unusual" circumstances where the Guidelines do not reflect the appropriate punishment for the offense. *Id.* Here, after the D.C. Circuit's ruling, the +3 and +8 enhancements do not apply, and the Court must address a situation where the Guidelines do not account for a significant aspect of Egtvedt's conduct or reflect the appropriate punishment. Nor do the Guidelines even account for the unique circumstances of this case—Egtvedt's penchant for instigating rhetoric, his dangerous behavior, and his assistance in disrupting the peaceful transfer of power. In these circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected." U.S.S.G. § 5K2.7.

      Although by its own terms § 5K2.7 "ordinarily" does not provide for an upward departure when the offense involves obstruction of justice, the obstruction of the Electoral College certification on January 6, 2021, is the type of unusual circumstance that the Sentencing Commission could not have anticipated and that warrants an upward departure. As the commentary explains, departure under § 5K2.7 is appropriate if the disruption of a governmental function is "substantial," meaning "substantially in excess" of the disruption ordinarily involved in an obstruction offense. *See* § 5K2.0 cmt. 3(B)(ii). Individuals, including Egtvedt, who obstructed the certification proceedings on January 6 targeted the peaceful transfer of power, one of the fundamental and foundational principles of our democracy. They were part of a mob that injured

14

more than one hundred police officers and resulted in more than 2.9 million dollars in losses.

Few, if any, disruptions of governmental functions have been more "substantial" than this unprecedented day in history, and the disruption was far "in excess of . . . that which ordinarily is involved in" an obstruction offense (such as impeding a single judicial proceeding). § 5K2.0(a)(3); *id.* cmt. 3(B)(ii). But, following the D.C. Circuit's decision, the seriousness of the crimes committed by defendants like Egtvedt is not adequately captured by the applicable Guideline, § 2J1.2. This Court should accordingly depart upward at any resentencing. *See United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours").[8]

Thus, at any resentencing, this Court may depart or vary upward to impose a significant sentence. Indeed, the record from the sentencing provides ample support for any variance or departure required to reach the 42-month sentence for Count Four. Egtvedt's assumption that he would receive a significantly reduced sentence simply because the eight-level and three-level enhancements no longer apply is not enough to carry his burden under 18 U.S.C. § 3143(b)(1)(B)(iv).

---

[8] At any resentencing, the government may argue that additional departure provisions apply. For example, given the dangerous circumstances created by the riot, the Court could depart under § 5K2.14 in addition to, or as an alternative to, departing under § 5K2.7. Section 5K2.14 provides for a departure if "national security, public health, or safety was significantly endangered." Because the assault on the Capitol endangered the safety of the public, police, and elected officials in a way not already captured by Egtvedt's Guidelines range, a departure would be appropriate. *Cf. United States v. Calloway*, No. 21-3057, 2024 WL 925790, at *3 (D.C. Cir. Mar. 5, 2024) (affirming departure under § 5K2.14 where district court found that the defendant "created a serious risk that multiple individuals could have been killed or injured").

### c. Egtvedt Has Failed to Show that He Is Not a Danger to the Community.

Finally, Egtvedt fails to show by clear and convincing evidence that he is not a danger to the community. This is a required showing for release, regardless of the nature of any appeal. Egtvedt's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Egtvedt was an active member of the violent mob that overran officers to breach the Senate Wing Doors at 2:48 p.m. And it is apparent from Egtvedt's own statements on January 6, 2021 that his intent was to take over "the peoples' house." Once inside the Capitol, Egtvedt's actions became even more volatile. He engaged in 27 minutes of sustained harassment of, physical resistance to, and impeding of law enforcement officers who were risking their lives to defend the Capitol and lawmakers within the Capitol. In doing so, Egtvedt caused bodily injury to Officer M.D. Moreover, Egtvedt tried to spur on the attempted insurrection by giving multiple interviews in which he implored others to join in the riots. Furthermore, Egtvedt's statements after his arrest, where he wrote that releasing him to the FBI would place him in the situation of a "political prisoner in a foreign land," indicate that he does not recognize the current U.S. government.

Against these facts, Egtvedt cannot show that he is not a danger to the community. Given his conduct on January 6, 2021, his rhetoric imploring others to join in the assault on the U.S. Capitol, and his statements after the fact that show he does not recognize the legitimacy of the U.S. government, Egtvedt cannot show that now, as we are entering another hotly contested presidential election year, he would not encourage and engage in such conduct again. Given Egtvedt's past actions, including his decision to join the January 6th riots, storm into the U.S. Capitol, and cause

16

injury to law enforcement officers, and Egtvedt's continued lack of remorse, he has not shown by clear and convincing evidence that he would not be a danger to the community if released.

## IV. CONCLUSION

Egtvedt has failed to meet his burden under 18 U.S.C. § 3143(b). Egtvedt cannot show that a sentence independent of his § 1512(c) conviction would include a term of no imprisonment or a reduced sentence shorter than the expected duration of his appeal. Moreover, Egtvedt cannot show that application of *Brock* is likely to result in a reduced sentence for his § 1512(c) conviction that is less than the expected duration of the appeal process. Finally, Egtvedt cannot show by clear and convincing evidence that he is not a danger to the community. For all these reasons, Egtvedt's motion for bond pending appeal should be denied.

    Respectfully submitted,

    MATTHEW M. GRAVES
    UNITED STATES ATTORNEY

BY:    */s/ Colleen D. Kukowski*
    Colleen D. Kukowski
    Michael C. Liebman
    Assistant United States Attorneys
    601 D Street, N.W.
    Washington, D.C. 20530
    (202) 252-2646 (Kukowski)
    (202) 252-7243 (Liebman)
    Colleen.Kukowski@usdoj.gov
    Michael.Liebman@usdoj.gov

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Opposition to Defendant's Motion for Release Pending Appeal was served on all counsel of record via the Court's electronic filing service.

                                                        */s/ Colleen D. Kukowski*
                                                        COLLEEN D. KUKOWSKI
                                                        Assistant United States Attorney

Date:   April 8, 2024